# EXHIBIT "A"

Alston & Bird

*Gwinnett Judicial Circuit  Superior Court Civil*

# Case History Report

## 08-A-10091-3   VISTA AVIATION VS WACHOVIA FINANCIAL ET AL

| | |
|---|---|
| *Case Type:* | SUPERIOR COURT GENERAL CIVIL |
| *Category:* | TORT |
| *Filing Type:* | COMPLAINT |
| *Official:* | JUDGE JACKSON |
| | FRAUD,CONSPIRACY AND GEORGIA RICO |

*Filing Date:*  11/13/2008

*Plaintiff/Petitioner/Applicant:*
  VISTA AVIATION LLC

*Attorney(s) of Record:*
  GRAYDON W FLORENCE   (404) 257-3000
  480 MT VERNON HWY NE
  ATLANTA, GA 30328-4142

*Defendant/Respondent:*
  WACHOVIA FINANCIAL SERVICES LLC
  WACHOVIA BANK NATIONAL ASSOCIATION

*Attorney(s) of Record:*

| | |
|---|---|
| 11/13/2008 | **Cross Referenced to**<br>SAME PARTIES<br>SA  08-A-09900-3 |
| 11/13/2008 | **Document Filed**<br>GEN CIVIL CASE FILING INFO FORM<br>Filed By: ATTORNEY FOR PLAINTIFF |
| 11/14/2008 | **Document Filed**<br>MOTION FOR APPOINTMENT OF PROCESS<br>Filed By: ATTORNEY FOR PLAINTIFF |
| 11/14/2008 | **Document Filed**<br>AFFIDAVIT  PETER ORLINS<br>Filed By: ATTORNEY FOR PLAINTIFF |
| 11/14/2008 | **Document Filed**<br>ORDER APPOINTING PROCESS SERVER |

FILED IN OFFICE
CLERK SUPERIOR COURT
IN THE SUPERIOR COURT OF GWINNETT COUNTY GWINNETT COUNTY, GA
STATE OF GEORGIA

2008 NOV 14  AM 11: 00

Vista Aviation, LLC
      Plaintiff,

TOM LAWLER, CLERK

                            CIVIL ACTION
vs.                                File No. 08A-10091-3

Wachovia Financial Services, LLC, et al
      Defendants.

### PLAINTIFF'S MOTION FOR APPOINTMENT OF A SPECIAL PROCESS SERVER

COMES NOW the Plaintiffs, pursuant to O.C.G.A. § 9-11-4(c) and shows this Court that expedited service on Defendants is necessary and requests the appointment of a Special Process Server to serve Defendants, as authorized under the law. Plaintiff submits herewith an Affidavit of the process server.

WHEREFORE, Plaintiff moves the Court for an Order appointing PETER ORLINS and agents of Ancillary Legal Corporation, who are not interested parties or a party to the suit, are citizens of the United States and over 18 years of age, to serve Defendants with process, and to make a return on that service pursuant to O.C.G.A. § 9-11-4(c).

This 14th day of November, 2008.

                            Respectfully submitted,

             By:                                              
                                  Graydon W. Florence, Esq.
                                  Georgia Bar No. 264900

480 Mount Vernon Highway, NE
Atlanta, GA 30328
404-257-3000

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2008 NOV 14  AM 11: 01

TOM LAWLER, CLERK

Vista Aviation, LLC
     Plaintiffs,

vs.

Wachovia Financial Services, LLC, et al
     Defendants.

CIVIL ACTION
File No. 08A-10091-3

### AFFIDAVIT OF PETER ORLINS, PROCESS SERVER

STATE OF GEORGIA
COUNTY OF GWINNETT

     PERSONALLY APPEARED before me, an officer duly authorized by law to administer oaths, PETER ORLINS, who after first being duly sworn, states:

     1.     My name is PETER ORLINS and I am competent in all respects to testify regarding the matters set forth herein. This Affidavit is given voluntarily in support of Plaintiff's Motion for Special Appointment of Process Server.

     2.     I am a process server for Ancillary Legal Corporation, a company that serves legal process in this state. I am 18 years of age or over, a citizen of the United States, a non-party to this action, and am not related by employment or otherwise to Plaintiff, or Plaintiff's attorneys or Defendant in the above case.

     3.     I am available to serve process, have experience in serving process, am not a felon and am willing to be appointed to serve process in this action. I have no interest in the outcome of this action.

                                         PETER ORLINS

Sworn to and subscribed before me
this 14th day of November, 2008.

Notary Public
My commission expires: _____

FILED IN OFFICE
CLERK SUPERIOR COURT

IN THE SUPERIOR COURT OF GWINNETT COUNTY, GA
STATE OF GEORGIA

2008 NOV 14  AM 11: 39

Vista Aviation, LLC
        Plaintiff,

TOM LAWLER, CLERK
CIVIL ACTION
File No. 08A-10091-3

vs.

Wachovia Financial Services, LLC, et al
        Defendants.

## ORDER GRANTING MOTION FOR SPECIAL APPOINTMENT OF PROCESS SERVER

Plaintiff's Motion for Special Appointment of Process Server having been read and considered, and it appearing to the Court that such an appointment is authorized by O.C.G.A. § 9-11-4(c) and should be made,

IT IS HEREBY ORDERED that PETER ORLINS and agents of Ancillary Legal Corporation, a citizen of the United States, is specially appointed, authorized, and directed to serve a copy of the Summons and Complaint in this action on Defendants and to make and file his proof of service as required by law.

SO ORDERED, this 14th day of November, 2008.

_____
Judge, Superior Court of Gwinnett County

Presented by:

Graydon W. Florence, Esq.
480 Mount Vernon Highway, NE
Atlanta, GA 30328
404-257-3000

78 ck

## SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

**VISTA AVIATION, LLC.**

     Plaintiff,

v.

**WACHOVIA FINANCIAL
SERVICES, LLC, AND
WACHOVIA BANK,
NATIONAL ASSOCIATION,**

     Defendants

                           C. A. No. 08A - 10093

TO THE ABOVE NAMED DEFENDANT:

     You are hereby summoned and required to file with the Clerk of said court and serve upon Plaintiff's attorney, whose name and address are:

          GRAYDON W. FLORENCE
          480 Mt. Vernon Highway, N.E.
          Atlanta, Georgia 30328-4142

          404-257-3000

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

     This _13_ day of November 2008.

                            TOM LAWLER, CLERK

                    Clerk, Superior Court of Gwinnett County

          By _Christina LeBeau_
          Deputy Clerk

SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2008 NOV 13  PM 4: 45

TOM LAWLER, CLERK

**VISTA AVIATION, LLC.**

     Plaintiff,

v.

C. A. No. ___08A-1009 13___

**WACHOVIA FINANCIAL
SERVICES, LLC, AND
WACHOVIA BANK,
NATIONAL ASSOCIATION,**

     Defendants

                             /

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND FOR DAMAGES FOR RICO VIOLATIONS AND BREACH OF CONTRACT

Vista Aviation, LLC (hereinafter **"Plaintiff "**) shows the following as its Complaint against Defendants Wachovia Financial Services, Inc. (hereinafter **"Defendant WFS"**) and Wachovia Bank, National Association (hereinafter **"Defendant WBNA"**):

1.

Plaintiff is a limited liability company duly registered in the State of Delaware.

2.

Defendant WFS is a North Carolina corporation transacting business in the State of Georgia. Service may be perfected on this Defendant's registered agent: Prentice-Hall Corp. Systems, 40 Technology Parkway South #300, Norcross, Gwinnett County, Georgia 30092. Defendant WFS is thus subject to the jurisdiction of this Court, and venue is proper in this Court.

3.

Defendant WBNA is a North Carolina corporation transacting business in the State of Georgia. Service may be perfected on this Defendant's registered agent: Corporation Service Company, 40 Technology Parkway South #300, Norcross, Gwinnett County, Georgia 30092. Defendant WNBA is thus subject to the jurisdiction of this Court, and venue is proper in this Court.

4.

Plaintiff asserts rights to relief against Defendants, jointly, severally, or in the alternative, in respect of, or arising out of, the same transaction, occurrence, or series of transactions or occurrences, and questions or law or fact common to all of them will arise in this action.

5.

At all times relevant hereto, Defendant WFS and Defendant WNBA were co-conspirators in the tortious activities set out below. On information and belief, Plaintiff states that, after discovery, further facts will be added by amendment to show that Defendant WFS was, at all times relevant hereto, a subsidiary of, and the alter ego of, Defendant WBNA and was used as the vehicle for improper and illegal activities that harmed Plaintiff.

6.

On or about April 26, 2006, Plaintiff executed a promissory note (the **"Promissory Note"**) in favor of Defendant WFS in the amount of One Million Eight Hundred Thousand Dollars ($1,800,000). A true and correct copy of the Promissory Note is attached hereto as **Exhibit "A."**

7.

Simultaneously with the execution of the aforesaid Promissory Note, Plaintiff also executed a document titled "Aircraft Security Agreement," granting a security interest in a

certain aircraft to Defendant WFS.  A true and correct copy of the Aircraft Security Agreement is attached hereto as **Exhibit "B."**

8.

Simultaneously with the execution of the aforesaid Promissory Note and Aircraft Security Agreement, Eduard de Guardiola (the **"Guarantor"**), Sole Member of Plaintiff, executed a document titled "Unconditional Guaranty, a true and correct copy of which is attached hereto as **Exhibit "C."**

9.

Under the terms of the aforesaid Promissory Note, Plaintiff began making monthly payments, and continued making timely payments on said Promissory Note through the payment due for November, 2008.

10.

On November 11, 2008, notwithstanding the timely payments by Plaintiff as aforesaid, counsel for Defendants sent a letter to Plaintiff, claiming a default under the aforesaid Promissory Note and Aircraft Security Agreement.  A true and correct copy of said letter is attached hereto as **Exhibit "D."**

11.

Defendants claimed that the alleged default under the aforesaid Promissory Note and Aircraft Security Agreement resulted from Guarantor's supposed default under other contractual obligations to Defendant WBNA, wholly unrelated to Plaintiff's performance under either the aforesaid Promissory Note or Aircraft Security Agreement, which default the Plaintiff and Guarantor vigorously dispute.

12.

Upon information and belief, Plaintiff states that Defendants' attempt to extort money or property from Plaintiff herein is another predicate act in furtherance of the Defendants' RICO conspiracy, as pled in the related case before this Court in **Acme Lending, LLC, _et al.,_ v. Wachovia Development Corporation, _et al._**, Civil Action No. 08-099003 (Superior Court of Gwinnett County, filed November 7, 2008) (hereinafter **"Acme"**), against the Guarantor and all entities in which he has an interest and which have business dealings with Defendant WBNA or its subsidiaries.

## COUNT ONE -- DECLARATORY RELIEF

13.

The allegations of paragraphs 1 through 12 above are incorporated by reference.

14.

The actions of Defendants in claiming a default under the aforesaid Promissory Note and Aircraft Security Agreement have caused uncertainty and insecurity to Plaintiff.  An actual controversy exists between Plaintiff and Defendants with respect the alleged default under the aforesaid Promissory Note and Aircraft Security Agreement supposedly caused by the Guarantor's default under other agreements with Defendant WBNA and its affiliates.

15.

Plaintiff requests that this Court issue a Temporary Restraining Order preserving the status quo and preventing all parties from taking any actions, including seizure of collateral, which would change the status quo until further order from this Court.

## COUNT TWO -- RICO VIOLATIONS

### 16.

The allegations of paragraphs 1 through 15 above are incorporated by reference.

### 17.

Plaintiff in this action, and Plaintiffs in the **Acme** matter identified in Paragraph 12 above, are related entities, having the Guarantor as a Member, owner, or guarantor, in either all or some capacity.   Plaintiffs in both this action and in **Acme** were the targets of Defendant WBNA and its affiliates.   The terms, "Plaintiffs," or "Plaintiff's group," as used in this Complaint, refers to both the Plaintiffs in this action and in the **Acme** matter.

### 18.

Starting in 2006, and continuing to date, Defendants have conspired with each other, and with others, and engaged in a pattern of racketeering activity where Defendants endeavored to, or did, acquire or maintain an interest in Plaintiffs' property  in violation of the Georgia RICO (Racketeer Influenced and Corrupt Organizations Act), O.C.G.A. § 16-14-1, *et seq.*

### 19.

Plaintiffs, as a group, were the target of Defendants' RICO conspiracy and the acts done in furtherance of that conspiracy, and Plaintiffs, as a group, were directly harmed as the result of Defendants' RICO violations.

### 20.

The pattern of Defendants' RICO violations that targeted Plaintiffs included, but is not necessarily limited to, the following predicate acts:

(1) **Theft by extortion in violation of O.C.G.A. § 16-8-16** when Defendant WFS, acting in conspiracy with Defendant WBNA, and as the alter ego of Defendant WBNA, attempted to extort money and property from Plaintiff by threatening to unlawfully seize property of Plaintiff or impair Plaintiff's credit or business repute by fraudulently claiming a default existed in other obligations of Plaintiff's group to Defendant WBNA and its affiliates.

(2) **Theft by deception in violation of O.C.G.A. § 16-8-3** when an affiliate of Defendant WBNA, acting in furtherance of the conspiracy with Defendant WBNA, on July 27, 2007, obtained, by means of false or fraudulent pretenses, a letter of credit from another member of Plaintiff's group in the amount of Three Million Dollars ($3,000,000) in return for a worthless security described as "A-2 Participation Interest." Defendant WBNA's affiliate knowingly and deliberately created the false impression that said security had value, and that it would be sold for a profit caused by Defendant WBNA's affiliate's entrepreneurial efforts. Defendant WBNA's and its affiliate's true intent was to obtain that Plaintiff's letter of credit by deceitful means with the intention of depriving that Plaintiff of said letter of credit.

(2) **Sale of an unregistered security in violation of O.C.G.A. § 10-5-24** when on July 27, 2007, an affiliate of Defendant WBNA, acting in furtherance of the conspiracy with Defendant WBNA, and the scheme to defraud a member of Plaintiff's group, sold an unregistered security to that Plaintiff for the sum of Three Million Dollars ($3,000,000), representing a certain interest in a limited liability company known as Bay Harbor Homes, LLC. This interest was described as "A-2 Participation Interest."

(3) **Theft by deception in violation of O.C.G.A. § 16-8-3** when an affiliate of Defendant WBNA, acting in furtherance of the conspiracy with Defendant WBNA, on July 27,

2007, obtained, from a member of Plaintiff's group, by means of false or fraudulent pretenses, cash in the amount of Three Million Two Hundred Fifty Thousand Dollars ($3,250,000) in return for a worthless security described as "A-2 Participation Interest." Defendant WBNA's affiliate knowingly and deliberately created the false impression that said security had value, and that it would be sold for a profit caused by Defendant WBNA's affiliates' entrepreneurial efforts. Defendant WBNA's affiliate's true intent was to obtain that Plaintiff's letter of credit by deceitful means with the intention of depriving that Plaintiff of said letter of credit.

(4)     **Sale of an unregistered security in violation of O.C.G.A. § 10-5-24** when on July 27, 2007, an affiliate of Defendant WNBA, acting in furtherance of the conspiracy with Defendant WBNA, in furtherance of a scheme to defraud a member of Plaintiff's group, sold an unregistered security to that Plaintiff for the sum of Three Million Two Hundred Fifty Thousand Dollars ($3,250,000), representing a certain interest in a limited liability company known as Bay Harbor Homes, LLC. This interest was described as "A-3 Participation Interest."

(5)     **Theft by conversion in violation of O.C.G.A. § 16-8-3** when an affiliate of Defendant WBNA, acting in furtherance of the conspiracy with Defendant WBNA, on or about July 24, 2008, improperly drew against a member of Plaintiff's group's  $3,000,000 letter of credit that the affiliate of Defendant WBNA was holding under an agreement to make a specified application of such letter of credit, thereby knowingly converting that Plaintiff's letter of credit to its own use in violation of the agreement.

## COUNT THREE --- BREACH OF CONTRACT

### 21.

The allegations of paragraphs 1 through 20 above are incorporated by reference.

### 22.

Defendants have willfully breached the aforesaid Aircraft Security Agreement, and its implied duties of good faith and fair dealing, by declaring a default under said Agreement and the Promissory Note when no default in fact exists.

### 23.

Plaintiff has suffered actual damages from Defendants' breach of the aforesaid Aircraft Security Agreement in an amount to be proved at trial.

## COUNT FOUR -- PUNITIVE DAMAGES

### 24.

The allegations of paragraphs 1 through 23 above are incorporated by reference.

### 25.

Defendants' actions in engaging in a pattern of racketeering activity in violation of the Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act and as otherwise describe in part in this Complaint show by clear and convincing evidence that Defendants' misconduct was intentional, willful, wanton, oppressive, malicious, fraudulent, and reckless, and evidences such an entire want or lack of care as to raise the presumption of a conscious indifference to the consequences of their actions.

26.

Plaintiff is entitled to a judgment against Defendants, in a bifurcated hearing and following a specific jury finding pursuant to O.C.G.A. § 51-12-5.1 for punitive and exemplary damages, in an amount to be determined by the enlightened conscience of impartial jurors, to punish and deter the Defendants from repeating such conduct in the future.

## COUNT FIVE --- ATTORNEY FEES AND EXPENSES OF LITIGATION

27.

The allegations of paragraphs 1 through 26 above are incorporated by reference.

28.

Defendants have acted in bad faith, has been stubbornly litigious, or have caused the Plaintiff unnecessary trouble and expense, therefore entitling Plaintiff to an award of expenses of litigation under O.C.G.A. §13-6-11.

WHEREFORE, Plaintiff respectfully prays as follows:

a.     **Under Count One**, that this Court issue a Temporary Restraining Order preserving the status quo, and thereafter grant declaratory relief determining the Parties' rights and obligations under the Promissory Note and Aircraft Security Agreement;

b.     **Under Count Two**, Plaintiff is entitled to recover three times its actual damages for the Defendants' violations of the Georgia RICO (Racketeer and Corrupt Organizations) Act that were directed against Plaintiff and that caused actual harm to the Plaintiff;

c.    **Under Count Two,** because Defendants violated the Georgia RICO (Racketeer and Corrupt Organizations) Act; the Plaintiff is entitled to an award of reasonable attorney's fees under the Georgia RICO Act.

d.    **Under Count Three,** Plaintiff is entitled to recover actual damages proven at trial caused by Defendants' breach of the Promissory Note and Aircraft Security Agreement;

e.    **Under Count Four,** Plaintiff is entitled to recover punitive or exemplary damages, in a bifurcated hearing and following a specific jury finding pursuant to O.C.G.A. § 51-12-5.1 that punitive and exemplary damages should be awarded, in an amount to be determined by the enlightened conscience of impartial jurors, to punish and deter Defendants from repeating such conduct in the future.

g.    **Under Count Five,** because Defendants have acted in bad faith, or have been stubbornly litigious, or have caused the Plaintiff unnecessary trouble and expense, Plaintiff is entitled to recover its expenses of litigation, including reasonable attorney's fees.

h.    The Plaintiff further prays that a jury trial be had on all issues of fact; and

i.    That this Court grant such other and further relief as may be deemed proper.

480 Mt. Vernon Hwy. NE
Atlanta GA 30328—4142
404-257-3000
404-257-0003 Fax
gwf@bellsouth.net

Graydon W. Florence
Georgia Bar Number 264900
Attorney for Plaintiff

## **VERIFICATION**

The undersigned, being duly sworn, deposes and says that:

1.  He is an adult person, competent to testify as to the matters set out herein, and knows the facts set out herein of his own personal knowledge.

2.  He is the Sole Member of Vista Aviation, LLC.

3.  He has read the foregoing Complaint, and states that the facts set out in said Complaint are true and correct.

This 13th day of November, 2008.

_____
Eduard de Guardiola

Sworn to and subscribed before me

This 13th day of November, 2008.

Notary Public

Notary Public
My Commission Expires April 12, 2009
Fulton County, Georgia



**WACHOVIA**

**WACHOVIA ORIGINAL**

## PROMISSORY NOTE

$1,800,000.00

April 26, 2006

Vista Aviation, L.L.C.
1360 Peachtree Street, Suite 1000
Atlanta, Georgia  30309
(Individually and collectively, "Debtor")

Wachovia Financial Services, Inc.
(a subsidiary of Wachovia Bank, National Association)
One Wachovia Center
Mail Code NC0738
Charlotte, North Carolina 28288-0738
(Hereinafter referred to as "Lender")

Debtor promises to pay to the order of Lender, in lawful money of the United States of America, at its office indicated above or wherever else Lender may specify, the sum of ONE MILLION EIGHT HUNDRED THOUSAND and N0/100 Dollars ($1,800,000.00) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**USE OF PROCEEDS.** Debtor shall use the proceeds of the loan evidenced by this Note to purchase or refinance the Aircraft described in that certain Aircraft Security Agreement dated April 26, 2006, (the "Aircraft Security Agreement").

**SECURITY.** Debtor has granted Lender a security interest in the Collateral described in the Loan Documents, including, but not limited to, personal property collateral described in the Aircraft Security Agreement (the "Collateral"). The Collateral is held by Lender as security for the Obligations. The provisions of this Note are subject to the Aircraft Security Agreement, and all capitalized terms used herein and not otherwise defined herein shall have the meanings assigned in the Aircraft Security Agreement. Reference is hereby made to the Aircraft Security Agreement for a supplemental statement of the rights of the holder of, and the nature and extent of the security for, this Note.

**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of the Loan evidenced by this Note (the "Interest Rate") from and including the Commencement Date of such Loan to the last Payment Date (as defined below), at the Fixed Rate for such Loan. "Fixed Rate" means the fixed rate of interest determined by the Lender on the Commencement Date for such Loan by increasing or decreasing the fixed rate (from an assumed interest rate of 6.19%) for each corresponding basis point change in the Funding Index Rate (defined below) from (a) January 18, 2006 (the date quoted in Lender's Proposal Letter to Debtor) and (b) the date which is three (3) Business Days prior to the Commencement Date. "Funding Index Rate" means, as of any date of determination, the 3-year US Interest Rate Swap (USSWAP) 3 Index on Bloomberg. The Debtor shall agree in the Notice of Borrowing that the date on which the Loan is made shall be the Commencement Date. The Fixed Rate may be further adjusted by Lender in the event that the Loan is made on a date later than that set forth in such Notice of Borrowing.

**REPAYMENT TERMS.** Commencing one month from the Commencement Date, principal on the Loan and accrued interest shall be payable on each Payment Date (as defined below) in sixty (60) consecutive monthly level payments (each payment to be inclusive of principal and interest) in the amount set forth in Schedule A attached hereto. "Payment Date" shall mean the same calendar day of each month as the calendar day on which the Commencement Date occurs, provided that any Payment Date that would otherwise fall on a day which is not a Business Day shall be extended to the next succeeding Business Day, unless such Business Day falls in another calendar month, in which case such Payment Date shall be on the next preceding Business Day. In any event, all principal and accrued interest shall be due and payable on the last Payment Date. By signing a Notice of Borrowing which acknowledges that such Loan is the final funding pursuant to this Note, the Debtor agrees that (a) the revised

EXHIBIT "A"

Schedule A for such Note attached to such Notice of Borrowing reflecting the principal repayment schedule based on the actual amount of the Loan which is outstanding on the Commencement Date, and (b) the Fixed Rate set forth in such Notice of Borrowing, will each be binding on the Debtor absent manifest error. In the event Lender fails to provide Debtor with such revised Schedule, Debtor shall repay the principal amount of the Loans on each Payment Date as directed in writing by Lender in advance of such date.

**PREPAYMENT.** Debtor may prepay the Note, in whole but not in part on any scheduled payment date hereunder upon ninety (90) days' prior written notice to Lender by prepaying the Note in full. Debtor may exercise such prepayment to the extent the following conditions are met: (a) if Debtor prepays this Note on or prior to the second anniversary date, on the date designated for such prepayment of the Note, Debtor shall have paid Lender an additional amount equal to three percent (3%) of the then outstanding principal balance on the Note as shown on the records of the Lender for such date (before taking into account any payments of principal paid on such date) in good, immediately available funds; (b) if Debtor prepays this Note after the second anniversary date, no prepayment premium shall be owing; and (c) on the date designated for any such prepayment of the Note, Debtor shall have paid all principal and interest payable with respect to the Note and any other amount due and payable or accrued, under the Note, the Security Agreement or any other Loan Document, including, without limitation, any prepayment or breakage charges as set forth in any applicable hedge documentation. Upon receipt of all such amounts, Lender shall release its lien with respect to the Collateral. Except as set forth in this paragraph, Debtor may not prepay the Note.

Notwithstanding the foregoing, no prepayment penalty will be assessed if (a) simultaneously with such prepayment the Aircraft and all other Collateral is replaced with a replacement aircraft and replacement Collateral (collectively, "Replacement Collateral") of equal or greater value and acceptable in all other respects to Lender, in each case, as determined by Lender in its sole discretion and (b) such Replacement Collateral is financed through Lender.

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a Default occurs and as long as a Default continues, all outstanding Obligations, other than Swap Obligations, shall bear interest at three percent (3%), plus the greater of (i) the Interest Rate, or (ii) the Prime Rate ("Default Rate"). The Default Rate shall also apply from acceleration until the Obligations (other than Swap Obligations) or any judgment thereon is paid in full. The "Prime Rate" as used herein shall mean a fluctuating rate of interest announced from time to time by Wachovia Bank, National Association (the "Bank") as its prime rate, which may not necessarily be its best lending rate, and shall change each time and become effective as of the date the Bank announces a change in such rate. The Bank and Lender each lend at rates both above and below the Prime Rate, and Debtor acknowledges that the Prime Rate is not represented or intended to be the lowest or most favorable rate of interest offered by Lender or the Bank.

**INTEREST AND FEE(S) COMPUTATION (30/360).** Interest and fees, if any, shall be computed on the basis of a 360-day year and 30 day months in the applicable period ("30/360 Computation"). The 30/360 Computation determines the annual effective yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period.

**APPLICATION OF PAYMENTS.** Monies received by Lender from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal. If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Lender.

If any payment received by Lender under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

**LATE CHARGE.** If any payments are not timely made, Debtor shall also pay to Lender a late charge equal to four percent (4%) of each payment past due for fifteen (15) or more days.

Acceptance by Lender of any late payment without an accompanying late charge shall not be deemed a waiver of Lender's right to collect such late charge or to collect a late charge for any subsequent late payment received.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Debtor shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Lender in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Debtor.

**REMEDIES UPON DEFAULT.** If a Default (as defined in the Aircraft Security Agreement) occurs under this Note or any Loan Documents, Lender may at any time thereafter, take the following actions: **Lender Lien.** Foreclose its security interest or lien against Debtor's accounts with Lender or any Lender Affiliate without notice. **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Lender's option, any or all other Obligations, but not Swap Obligations, which Swap Obligations shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable; provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Debtor or any Guarantor or endorser of this Note, all Obligations (other than Swap Obligations) shall automatically and immediately be due and payable. **Cumulative.** Exercise any rights and remedies as provided under the Note, the Aircraft Security Agreement, any Guaranty and other Loan Documents, or as provided by law or equity.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Lender. No waiver by Lender of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Lender in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Debtor and each other person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Lender may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to the Collateral securing this Note, or with respect to any Debtor or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Debtor and other such person, and without affecting the liability of each Debtor and other such person; provided, Lender may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Debtor, or if there is more than one Debtor, without the consent of at least one Debtor; and further provided, if there is more than one Debtor, Lender may not enter into a modification of this Note which increases the burdens of a Debtor without the consent of that Debtor.

**GOVERNING LAW.** This Note shall be governed by and construed in accordance with the internal laws of the State of North Carolina, including all matters of construction, validity and performance.

**DOCUMENT DELIVERY.** Debtor agrees that the parties intend that there shall be only one manually executed original of this Note, and, to the extent that this document constitutes chattel paper under the UCC, no security interest herein may be created by the transfer or possession of any counterpart other than the copy marked "WACHOVIA ORIGINAL".

[The remainder of this page is intentionally left blank.]

**IN WITNESS WHEREOF**, Debtor on the day and year first above written, has caused this Note to be executed under seal.

VISTA AVIATION, L.L.C.

By: _____

Name:

Title:

State of _____Georgia_____

County of _____Fulton_____

I, _gabrielle E Howau)_____, a Notary Public in and for said state and county, do hereby certify that _Eduard de Guardiola_____ personally appeared before me this day and acknowledged his due execution of the foregoing Promissory Note.

Witness my hand and official seal this _25th_ day of April, 2006.

_gabrielle E Howau)_
Notary Public

My commission expires:

_____

[NOTARY SEAL]

Notary Public
My Commission Expires April 12, 2009
Fulton County, Georgia

**Amortization**

| Period | Payment | Principal | Interest | Balance |
|---|---|---|---|---|
| 0 | $0.00 | $0.00 | $0.00 | $1,800,000.00 |
| 1 | $13,993.69 | $3,790.69 | $10,203.00 | $1,796,209.31 |
| 2 | $13,993.69 | $3,812.17 | $10,181.51 | $1,792,397.14 |
| 3 | $13,993.69 | $3,833.78 | $10,159.90 | $1,788,563.36 |
| 4 | $13,993.69 | $3,855.51 | $10,138.17 | $1,784,707.84 |
| 5 | $13,993.69 | $3,877.37 | $10,116.32 | $1,780,830.47 |
| 6 | $13,993.69 | $3,899.35 | $10,094.34 | $1,776,931.13 |
| 7 | $13,993.69 | $3,921.45 | $10,072.24 | $1,773,009.68 |
| 8 | $13,993.69 | $3,943.68 | $10,050.01 | $1,769,066.00 |
| 9 | $13,993.69 | $3,966.03 | $10,027.66 | $1,765,099.97 |
| 10 | $13,993.69 | $3,988.51 | $10,005.17 | $1,761,111.46 |
| 11 | $13,993.69 | $4,011.12 | $9,982.57 | $1,757,100.34 |
| 12 | $13,993.69 | $4,033.86 | $9,959.83 | $1,753,066.48 |
| 13 | $13,993.69 | $4,056.72 | $9,936.97 | $1,749,009.76 |
| 14 | $13,993.69 | $4,079.72 | $9,913.97 | $1,744,930.04 |
| 15 | $13,993.69 | $4,102.84 | $9,890.85 | $1,740,827.20 |
| 16 | $13,993.69 | $4,126.10 | $9,867.59 | $1,736,701.10 |
| 17 | $13,993.69 | $4,149.49 | $9,844.20 | $1,732,551.62 |
| 18 | $13,993.69 | $4,173.01 | $9,820.68 | $1,728,378.61 |
| 19 | $13,993.69 | $4,196.66 | $9,797.03 | $1,724,181.95 |
| 20 | $13,993.69 | $4,220.45 | $9,773.24 | $1,719,961.50 |
| 21 | $13,993.69 | $4,244.37 | $9,749.32 | $1,715,717.13 |
| 22 | $13,993.69 | $4,268.43 | $9,725.26 | $1,711,448.70 |
| 23 | $13,993.69 | $4,292.63 | $9,701.06 | $1,707,156.07 |
| 24 | $13,993.69 | $4,316.96 | $9,676.73 | $1,702,839.11 |
| 25 | $13,993.69 | $4,341.43 | $9,652.26 | $1,698,497.69 |
| 26 | $13,993.69 | $4,366.04 | $9,627.65 | $1,694,131.65 |
| 27 | $13,993.69 | $4,390.78 | $9,602.90 | $1,689,740.87 |
| 28 | $13,993.69 | $4,415.67 | $9,578.01 | $1,685,325.19 |
| 29 | $13,993.69 | $4,440.70 | $9,552.98 | $1,680,884.49 |
| 30 | $13,993.69 | $4,465.87 | $9,527.81 | $1,676,418.62 |
| 31 | $13,993.69 | $4,491.19 | $9,502.50 | $1,671,927.43 |
| 32 | $13,993.69 | $4,516.65 | $9,477.04 | $1,667,410.79 |
| 33 | $13,993.69 | $4,542.25 | $9,451.44 | $1,662,868.54 |
| 34 | $13,993.69 | $4,567.99 | $9,425.69 | $1,658,300.54 |
| 35 | $13,993.69 | $4,593.89 | $9,399.80 | $1,653,706.66 |
| 36 | $13,993.69 | $4,619.93 | $9,373.76 | $1,649,086.73 |
| 37 | $13,993.69 | $4,646.11 | $9,347.57 | $1,644,440.62 |
| 38 | $13,993.69 | $4,672.45 | $9,321.24 | $1,639,768.17 |
| 39 | $13,993.69 | $4,698.93 | $9,294.75 | $1,635,069.23 |
| 40 | $13,993.69 | $4,725.57 | $9,268.12 | $1,630,343.66 |
| 41 | $13,993.69 | $4,752.36 | $9,241.33 | $1,625,591.31 |
| 42 | $13,993.69 | $4,779.29 | $9,214.39 | $1,620,812.01 |
| 43 | $13,993.69 | $4,806.38 | $9,187.30 | $1,616,005.63 |
| 44 | $13,993.69 | $4,833.63 | $9,160.06 | $1,611,172.00 |
| 45 | $13,993.69 | $4,861.03 | $9,132.66 | $1,606,310.97 |
| 46 | $13,993.69 | $4,888.58 | $9,105.11 | $1,601,422.39 |
| 47 | $13,993.69 | $4,916.29 | $9,077.40 | $1,596,506.10 |

| | | | |
|---|---|---|---|
| 48 | $13,993.69 | $4,944.16 | $9,049.53 | $1,591,561.94 |
| 49 | $13,993.69 | $4,972.18 | $9,021.50 | $1,586,589.76 |
| 50 | $13,993.69 | $5,000.37 | $8,993.32 | $1,581,589.39 |
| 51 | $13,993.69 | $5,028.71 | $8,964.98 | $1,576,560.68 |
| 52 | $13,993.69 | $5,057.22 | $8,936.47 | $1,571,503.47 |
| 53 | $13,993.69 | $5,085.88 | $8,907.81 | $1,566,417.58 |
| 54 | $13,993.69 | $5,114.71 | $8,878.98 | $1,561,302.87 |
| 55 | $13,993.69 | $5,143.70 | $8,849.99 | $1,558,159.17 |
| 56 | $13,993.69 | $5,172.86 | $8,820.83 | $1,550,986.31 |
| 57 | $13,993.69 | $5,202.18 | $8,791.51 | $1,545,784.13 |
| 58 | $13,993.69 | $5,231.67 | $8,762.02 | $1,540,552.47 |
| 59 | $13,993.69 | $5,261.32 | $8,732.36 | $1,535,291.15 |
| 60 | $1,543,993.69 | $1,535,291.15 | $8,702.54 | $0.00 |
| | =============== | =============== | =============== | |
| | $2,369,621.22 | $1,800,000.00 | $569,621.22 | |

 **WACHOVIA**

## NOTICE OF BORROWING
### (TO PROMISSORY NOTE DATED AS OF APRIL 26, 2006)

Vista Aviation, L.L.C. ("Debtor") hereby issues to WACHOVIA FINANCIAL SERVICES, INC. (a subsidiary of Wachovia Bank, National Association)("Lender") this Notice of Borrowing dated April 26, 2006 (this "Notice of Borrowing"), in accordance with the terms of the Aircraft Security Agreement (the "Agreement") dated as of April 26, 2006, by and between Debtor and Lender, and the Promissory Note (the "Note") dated as of April 26, 2006, executed by Debtor and delivered to Lender. All capitalized terms used without definition herein shall have the meanings assigned in the Agreement.

Debtor (a) hereby certifies, represents, warrants and agrees that: the Aircraft described on Schedule I of the Agreement (the "Aircraft") has been delivered, and is hangared at the address set forth in Schedule I and shall not be hangared elsewhere without the prior written consent of Lender; and (b) authorizes and directs Lender to pay to each of the indicated parties the amount(s) set forth below:

| Recipient of Funds: | Amount: |
|---|---|
| Vista Aviation, L.L.C. | $ 1,800,000.00 |
| Total Disbursement(s): | $ 1,800,000.00 |

This Notice of Borrowing shall be construed as supplemental to the Agreement and shall be subject thereto. The Agreement is hereby ratified, approved and confirmed.

Debtor confirms that the borrowing requested herein shall be the sole funding under the Note and that the date on which such funding occurs shall be the Commencement Date. Debtor agrees that the revised Schedule A attached hereto as Annex A shall amend and replace the Schedule A currently attached to the Note, and that such Schedule A shall be binding on the Debtor absent manifest error. Debtor further agrees that so long as, no later than May 27, 2006: (i) Lender receives back from Debtor an executed copy of this Notice of Borrowing, and (ii) the funding occurs, then the Fixed Rate shall be 6.802%. If each of the conditions set forth in the preceding sentence is not satisfied by the indicated date, then Lender may adjust the Fixed Rate and if there is such an adjustment then a new Notice of Borrowing for the funding will need to be executed by Debtor.

[The reminder of this page is intentionally left blank.]

**IN WITNESS WHEREOF,** Debtor on the day and year first above written, has caused this Notice of Borrowing to be executed under seal.

VISTA AVIATION, LLC

By: _____

Name:

Title:

# EXHIBIT B

**WACHOVIA**

```
FAA AUTHORIZATION CODE:
_____
INTERNATIONAL REGISTRY (AIRFRAME):   RECORDED
(ENGINE NO. 1): _____
(ENGINE NO. 2): _____

2006 MAY 30  AM 11: 03

FEDERAL AVIATION
ADMINISTRATION
```

## AIRCRAFT SECURITY AGREEMENT

THIS AIRCRAFT SECURITY AGREEMENT is made and entered into by Debtor and Lender as of April 26, 2006

DEBTOR:

Vista Aviation, L.L.C.
1360 Peachtree Street, Suite 1000
Atlanta, Georgia 30309
(Individually and collectively, "Debtor")

LENDER:

Wachovia Financial Services, Inc.
(a subsidiary of Wachovia Bank, National Association)
One Wachovia Center
Mail Code NC0738
Charlotte, North Carolina 28288-0738

This Aircraft Security Agreement (this "Agreement") applies to the loan (the "Loan") made by Lender to Debtor to purchase or refinance the Aircraft, evidenced by a promissory note subject hereto, in a form comparable to the form note attached hereto as Exhibit A, and any extensions, renewals, modifications or novations thereof (the "Note") and all Loan Documents (as hereinafter defined). Capitalized terms used without definition herein shall have the meanings given to such terms in Annex A hereto. Relying upon the covenants, agreements, representations and warranties contained in this Agreement, Lender is willing to extend credit to Debtor upon the terms and subject to the conditions set forth herein, and Lender and Debtor agree as follows:

SECTION 1 LOAN. Subject to the terms hereof and the terms and conditions of the Note, Debtor may borrow and Lender may advance an amount not to exceed such amounts as are set forth in the Note, solely for the purchase or refinance of the Aircraft. Lender shall not be required to advance any amount in excess of the actual cost of the Aircraft. Prior to the advance of the Loan by Lender under this Agreement, each of the following conditions shall have been met to Lender's satisfaction: (a) Security Documents and Cape Town Treaty. (i) Debtor shall deliver, at Lender's request, all documents required by Lender to create and perfect Lender's security interest in the Collateral including, without limitation, UCC-1 financing statements and FAA filing documents, all in form and substance acceptable to Lender (collectively, the "Security Documentation"). (ii) Debtor shall have registered, on the International Registry, its consent to the registration of Lender's International Interest created pursuant to this Agreement and the other Loan Documents (including any Prospective International Interest) with respect thereto. (iii) Debtor shall have executed and delivered to Lender an Irrevocable De-Registration and Export Request Authorization (an "IDERA") in the form attached hereto as Exhibit C. (iv) Lender shall have received evidence satisfactory to it that there are no International Interests or Prospective International Interests against the Aircraft to which Lender has not consented, and that the contract of sale pursuant to which the Debtor acquired or is acquiring its interest in the Aircraft is, or will promptly be, registered with the International Registry. (b) Lien Searches. Lender shall have completed all lien searches and/or title verifications, filed all Security Documentation and the IDERA with the FAA, completed the registration of its International Interest on the International Registry, and received all information Lender deems necessary in Lender's sole opinion to ensure that Lender has a perfected first lien security interest in the Collateral. (c) Notice of Borrowing. Debtor shall provide, in form and substance satisfactory to Lender, a duly completed Notice of Borrowing in the form attached hereto as Exhibit B (the "Notice

**CERTIFIED COPY-TO BE RECORDED**

ORIG RET DEPT _____ 0611613033364, $15 4/26/06

EXHIBIT "B"

of Borrowing"). (d) **Additional Documents.** Lender shall receive such additional supporting documents as Lender or its counsel may reasonably request. The Loan, once repaid, may not be re-borrowed.

SECTION 2  PAYMENT TERMS. The Note shall be payable in the number of payments of principal and shall accrue interest as set forth therein. Notwithstanding the foregoing, all principal and accrued interest for the Loan shall be due and payable on the date of the last scheduled payment of such Note.

SECTION 3  COLLATERAL.  For value received and to secure payment and performance of the Obligations, the Swap Obligations, and all other obligations owing to Lender and/or any Lender Affiliate, however created, arising or evidenced, whether direct or indirect, absolute or contingent, now existing or hereafter acquired, and future advances, and all costs and expenses incurred by Lender to obtain, preserve, perfect and enforce the security interest granted herein and to maintain, preserve and collect the property subject to the security interest, Debtor hereby grants to Lender (for itself and any Lender Affiliate) a continuing first priority security interest in and lien upon the following described property, whether now owned or hereafter acquired (collectively, the "Collateral"), and agrees that the foregoing, together with the other provisions of this Agreement, grant creates in favor of the Lender an International Interest in the Aircraft:

(i) The Aircraft (including, without limitation, the Airframe and the Engines); (ii) all right, title, and interest of Debtor in and to any purchase agreement, rental agreement, charter agreement, or other agreement(s) respecting the Aircraft and/or any of the Engines, including, but not limited to, Debtor's right to receive, either directly or indirectly, from any party or person, any rents or other payments due under such agreement(s); (iii) the propellers (if any), appliances, and spare parts identified and/or described by type and location on Schedule I attached hereto and incorporated herein by reference; (iv) any and all deposit accounts (special, general, or otherwise) of Debtor maintained at Lender or any Lender Affiliate; (v) any money or other assets of Debtor which now or hereafter come into the possession, custody, or control of Lender or any Lender Affiliate; (vi) any and all substitutions, replacements, and proceeds of any of the foregoing items, including, but not limited to, proceeds of insurance covering the Airframe, the Engines, and or any other portion of the Collateral, and any and all accounts, general intangibles, contract rights, inventory, equipment, money, drafts, instruments, deposit accounts, or other tangible or intangible property of Debtor resulting from the sale (authorized or unauthorized) or other disposition of the Collateral, or any portion thereof, and the proceeds thereof, and (vii) all proceeds of the foregoing.

SECTION 4  REPRESENTATIONS. Debtor represents that from the date of this Agreement and until final payment in full of the Obligations: **Accurate Information.** Schedule I contains a true, correct and complete description of the Aircraft, and all information of whatever nature now and hereafter furnished to Lender is and will be true, correct and complete. Any such information relating to Debtor's or any Guarantor's financial condition will accurately reflect Debtor's or such Guarantor's financial condition as of the date(s) thereof, (including all contingent liabilities of every type), and Debtor further represents that its financial condition has not changed materially or adversely since the date(s) of the last delivery of such documents. In addition, and without limiting the foregoing, Debtor shall supply Lender, within five (5) days after written request therefor, the exact location of the Airframe and each Engine. **Authorization; Non-Contravention.** The execution, delivery and performance by Debtor and each Guarantor, as applicable, of this Agreement and other Loan Documents to which it is a party are within its power, have been duly authorized as may be required and, if necessary, by making appropriate filings with any governmental agency or unit and are the legal, binding, valid and enforceable obligations of Debtor and each Guarantor; and do not (i) contravene, or constitute (with or without the giving of notice or lapse of time or both) a violation of any provision of applicable law, a violation of the organizational documents of Debtor or any Guarantor, or a default under any agreement, judgment, injunction, order, decree or other instrument binding upon or affecting Debtor or any Guarantor, (ii) result in the creation or imposition of any lien (other than the lien(s) created by the Loan Documents) on any of Debtor's or any Guarantor's assets, or (iii) give cause for the acceleration of any obligations of Debtor or any Guarantor to any other creditor. **Citizen of the United States.** Debtor is a "citizen of the United States" as such term is defined in §40102(a)(15) of the Federal Aviation Act. **Asset Ownership.** Debtor owns the Collateral, or, if the Collateral is being acquired with the proceeds of the advance under the Loan Documents, Debtor authorizes Lender to disburse such proceeds directly to the seller of the Collateral. Debtor has adequate corporate power to purchase, acquire and hold the Collateral. Debtor currently has, or will have upon disbursement of proceeds by Lender to the seller of the Collateral, good and marketable title to all of the Collateral, and the power to dispose of the Aircraft, and will warrant and defend the same against all claims, and all such

Collateral is free and clear of all mortgages, security deeds, pledges, liens, charges, International Interests, Prospective International Interests, and all other encumbrances, except as created hereunder. To Debtor's knowledge, no claims or interests adverse to Debtor's present rights in the Collateral have arisen. Debtor has provided (or, if not yet entered into, will provide promptly with the entering into thereof) Lender with true and correct copies of all agreements constituting part of the Collateral, including, without limitation, all charter agreements and leases with respect to the Aircraft. **Cross-Collateralization.** The Collateral and any other collateral which Lender or any Lender Affiliate may at any time acquire from any other source in connection with the Obligations or the Swap Obligations shall constitute cross-collateral for all Obligations or Swap Obligations of Debtor without appointment or designation as to particular Obligations or Swap Obligations, and all Obligations and Swaps Obligations, howsoever and whenever incurred, shall be secured by all of the Collateral, howsoever and whenever acquired, and Lender, and, with respect to Swap Obligations, any Lender Affiliate, shall have the right, in its sole discretion, to determine the order in which Lender's or Lender's Affiliate's rights in or remedies against the Collateral are to be proceeded against and the order of application of proceeds of the Collateral as against particular Obligations or Swap Obligations of Debtor. **Sufficiency of Capital.** Debtor is not, and after consummation of this Agreement and after giving effect to all indebtedness incurred and liens created by Debtor in connection with the Note and any of the other Loan Documents, will not be, insolvent within the meaning of 11 U.S.C. § 101, as in effect from time to time. **Compliance with Laws.** Debtor is and will be in compliance in all respects with all federal, state and local laws, rules and regulations applicable to the creation, use, operation, manufacture and storage of the Collateral, its properties, operations, business, and finances, including, without limitation, any federal or state laws relating to liquor (including 18 U.S.C. § 3617, et seq.) or narcotics (including 21 U.S.C. § 801, et seq.) and/or any commercial crimes; all applicable federal, state and local laws and regulations intended to protect the environment; and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if applicable. None of Debtor, any Affiliate of Debtor (as defined in Section 20 hereof) or any Guarantor is (i) named on the United States Department of the Treasury's Specially Designated Nationals or Blocked Persons list available through http://www.treas.gov/offices/eotffc/ofac/sdn/index.html or as shall otherwise be published from time to time, or (ii) (A) an agency of the government of a country, (B) an organization controlled by a country, or (C) a person resident in a country that is subject to sanctions under a program specified in http://www.treas.gov/offices/eotffc/ofac/sanctions/index.html or as shall otherwise be published from time to time, as such program may be applicable to such agency, organization, or person. **Name and Offices; Jurisdiction of Organization.** The name and address of Debtor appearing at the beginning of this Agreement are Debtor's exact legal name and the address of its chief executive office. There has been no change in the name of Debtor, or the name under which Debtor conducts business, within the five (5) years preceding the date hereof except as previously reported in writing to Lender. Debtor has not moved its chief executive office within the five (5) years preceding the date hereof except as previously reported in writing to Lender. Debtor is organized under the laws of Delaware, United States of America, and has not changed the jurisdiction of its organization within the five (5) years preceding the date hereof except as previously reported in writing to Lender. **Organization and Authority.** The Debtor and/or each Guarantor, as applicable, which is a corporation, partnership or limited liability company, is duly created, validly existing and in good standing under the laws of the state of its organization, and has all powers, governmental licenses, authorizations, consents and approvals required to operate its business as now conducted. The Debtor and/or each Guarantor, as applicable, which is a corporation, partnership or limited liability company, is duly qualified, licensed and in good standing in each jurisdiction where qualification or licensing is required by the nature of its business or the character and location of its property, business or customers, and in which the failure to so qualify or be licensed, as the case may be, in the aggregate, could have a material adverse effect on the business, financial position, results of operations, properties or prospects of Debtor or any such Guarantor. **No Litigation.** There are no pending or threatened suits, claims or demands against Debtor or any Guarantor that have not been disclosed to Lender by Debtor in writing, and approved by Lender. **Regulation U.** None of the proceeds of the credit secured hereby shall be used directly or indirectly for the purpose of purchasing or carrying any margin stock in violation of any of the provisions of Regulation U of the Board of Governors of the Federal Reserve System ("Regulation U"), or for the purpose of reducing or retiring any indebtedness which was originally incurred to purchase or carry margin stock or for any other purchase which might render the Loan a "Purpose Credit" within the meaning of Regulation U.

**SECTION 5 AFFIRMATIVE COVENANTS.** Debtor agrees that from the date hereof and until final payment in full of the Obligations, unless Lender shall otherwise consent in writing, Debtor will: **Business Continuity.** Conduct its business in substantially the same manner and locations as such business is now and has previously been conducted. **Compliance with Other Agreements.** Comply with all terms and conditions

contained in this Agreement, and all other Loan Documents, and swap agreements with Lender or any Lender Affiliate, if applicable, as defined in 11 U.S.C. § 101, as in effect from time to time. **Insurance.** In addition to the insurance required for the Collateral, as specified below, maintain adequate insurance coverage with respect to its properties and business against loss or damage of the kinds and in the amounts customarily insured against by companies of established reputation engaged in the same or similar businesses including, without limitation, commercial general liability insurance, workers compensation insurance, and business interruption insurance; all acquired in such amounts and from such companies as are reasonably acceptable to Lender.. **Notice of Default and Other Notices.** (a) Notice of Default. Furnish to Lender immediately upon becoming aware of the existence of any condition or event which constitutes a Default or any event which, upon the giving of notice or lapse of time or both, may become a Default, written notice specifying the nature and period of existence thereof and the action which Debtor is taking or proposes to take with respect thereto. (b) Other Notices. Promptly notify Lender in writing of (i) any material adverse change in its financial condition or its business; (ii) any default under any material agreement, contract or other instrument to which it is a party or by which any of its properties are bound, or any acceleration of the maturity of any indebtedness owing by Debtor; (iii) any material adverse claim against or affecting Debtor or any part of its properties; and (iv) the commencement of, and any material determination in, any litigation with any third party or any proceeding before any governmental agency or unit affecting Debtor. **Payment of Debts.** Pay and discharge when due, and before subject to penalty or further charge, and otherwise satisfy before maturity or delinquency, all obligations, debts, taxes, and liabilities of whatever nature or amount, except those which Debtor in good faith disputes.

**SECTION 6   NEGATIVE COVENANTS.** Debtor agrees that from the date hereof and until final payment in full of the Obligations, unless Lender shall otherwise consent in writing, Debtor will not:  **Default on Other Contracts or Obligations.** Default on any material contract with or obligation when due to a third party or default in the performance of any obligation to a third party incurred for money borrowed. **Government Intervention.** Permit the assertion or making of any seizure, vesting or intervention by or under authority of any governmental entity, as a result of which the management of Debtor or any Guarantor is displaced of its authority in the conduct of its respective business or such business is curtailed or materially impaired. **Judgment Entered.** Permit the entry of any monetary judgment or the assessment against, the filing of any tax lien against, or the issuance of any writ of garnishment or attachment against any property of Debtor or debts due to Debtor.

**SECTION 7     ADDITIONAL COVENANTS; LIENS.** Debtor agrees to keep accurate and complete logs, manuals, books and records relating to the Collateral in the English language, and to provide Lender with copies of reports and information relating to Collateral as Lender may reasonably require. At any reasonable time, Debtor shall cause the Collateral (including logs, books, manuals, and records comprising the Collateral) to be exhibited to Lender (or persons designated by Lender) at a location reasonably requested by Lender for purposes of inspection and copy. Debtor is, or concurrent with the completion of the transactions contained in the Loan Documents, will be and shall continue to be the registered owner of the Aircraft pursuant to a proper registration under the Federal Aviation Act, and Debtor qualifies, and shall continue to qualify, as a citizen of the United States as defined in § 40102(a)(15) of Title 49 of the United States Code. Except for the lien of this Agreement and the International Interest created hereby, Debtor will not suffer or permit to exist or consent to any security interest, lien, charge, International Interest, Prospective International Interest, or other encumbrance relative to the Collateral (including, without limitation, any charter or lease), whether voluntary or involuntary, until all of the Obligations have been completely discharged and all Swap Obligations have terminated or matured and all amounts due and owing thereunder by Debtor have been paid in full, and shall promptly at its own expense, take such action as maybe necessary to duly discharge any such security interest, lien, charge, International Interest, Prospective International Interest, or other encumbrance; provided, however, that the foregoing shall not prohibit Debtor from (a) incurring any materialmen's, mechanics', workmen's, employees', or other like liens, arising in the ordinary course of business, the payment for which is not yet due and payable, or liens for taxes, assessments or governmental charges or levies, the payment for which is not yet due and payable and (b) arranging for the chartering of the Aircraft in the ordinary course of business in accordance with applicable law (including, without limitation, FAA regulations) so long as the charter agreements indicate that such charter is expressly subject and subordinate to Lender's rights hereunder, including the right to repossess the Aircraft upon a Default, and, at Lender's request, Debtor (a) provides Lender with the chattel paper original of any such charter agreement, and/or (b) records and registers such charter agreement, along with Lender's interest therein  and the subordination agreement in favor of Lender,  with the FAA and the International Registry (with such registration to include any required registered consents).

**SECTION 8  INFORMATION.**  Debtor shall furnish Lender with such other information, financial or otherwise, relating to Debtor or the Collateral as Lender shall reasonably request.

**SECTION 9  TITLE/TAXES.**  Debtor has (or concurrently with disbursement of proceeds by Lender to the seller of the Collateral, will have) good and marketable title to the Collateral and will warrant and defend same against all claims. Debtor will not transfer, sell, or lease the Collateral (except as permitted herein). Debtor agrees to pay promptly all taxes and assessments upon or for the use of the Collateral and on this Agreement.  At its option, Lender may discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral. Debtor agrees to reimburse Lender, on demand, for any such payment made by Lender. Any amounts so paid shall be added to the Obligations.

**SECTION 10  WAIVERS.**  Debtor agrees not to assert against Lender as a defense (legal or equitable), as a set-off, as a counterclaim, or otherwise, any claims Debtor may have against any seller or lessor that provided personal property or services relating to any part of the Collateral or against any other party liable to Lender for all or any part of the Obligations.  Upon the occurrence and continuation of a Default, Debtor waives any and all rights to notice or hearing prior to Lender taking immediate possession of the Collateral or any portion thereof, and Debtor waives any and all rights to any bond or security which might be required by applicable law prior to the exercise of any of Lender's remedies against the Collateral or any portion thereof. All rights of Lender and its security interests hereunder, and all obligations of Debtor hereunder, shall be absolute and unconditional, not discharged or impaired irrespective of (and regardless of whether Debtor receives any notice of): (i) any lack of validity or enforceability of any Loan Document or any provision therein, or any Swap Obligation; (ii) any change in the time, manner or place of payment or performance, or in any term, of all or any of the Obligations, the Swap Obligations, or the Loan Documents or any other amendment or waiver of or any consent to any departure from any Loan Document or any Swap Obligations; or (iii) any exchange, insufficiency, unenforceability, enforcement, release, impairment or non-perfection of the Collateral or any portion thereof, or any release of or modifications to or insufficiency, unenforceability or enforcement of the obligations of any guarantor or other obligor.  To the extent permitted by law, Debtor hereby waives any rights under any valuation, stay, appraisement, extension or redemption laws now existing or which may hereafter exist and which, but for this provision, might be applicable to any sale or disposition of the Collateral by Lender; and any other circumstance which might otherwise constitute a defense available to, or a discharge of any party with respect to the Obligations or the Swap Obligations.

**SECTION 11  NOTIFICATIONS; LOCATION OF THE COLLATERAL.**  Debtor will notify Lender in writing at least thirty (30) days prior to any change in: (i) Debtor's chief place of business and/or residence; (ii) Debtor's name or identity; (iii) Debtor's corporate/organizational structure; or (iv) the jurisdiction in which Debtor is organized.  In addition, Debtor shall promptly notify Lender of any claims or alleged claims of any other person or entity to the Collateral or the institution of any litigation, arbitration, governmental investigation or administrative proceedings against or affecting the Collateral.  The Aircraft will be primarily hangared at the location specified on Schedule I hereto, and shall not be primarily based and domiciled elsewhere without the prior written consent of Lender.  Debtor shall give to Lender (i) five (5) days' prior written notice of any proposed change of the primary hangar location of the Aircraft; (ii) within five (5) days after receiving a written request therefore, the exact hangared location of the Aircraft, and (iii) if a Default shall have occurred and be continuing, within five (5) days after written request therefor, the exact location of the Aircraft. Debtor shall keep the Aircraft primarily hangared at the location(s) previously provided to Lender until such time as Lender provides written advance consent to a change of location. Debtor will bear the cost of preparing, filing and/or registering any documents or instruments necessary to protect Lender's liens.

**SECTION 12  CONDITION AND USE.**

(a)     Debtor represents that the Aircraft is in good repair and condition and that Debtor shall use reasonable care to prevent the Aircraft from being damaged or depreciating more rapidly than it should under normal market conditions.  Debtor shall immediately notify Lender of any material loss or damage to the Aircraft. Debtor will neither use the Collateral, nor permit the Collateral to be used, for any unlawful purpose or contrary to any applicable statute, law, ordinance or regulation of any federal, state or local body, agency or of authority.  Debtor will comply with, or cause to be complied with, at all times and in all respects, all statutes, laws, ordinances and regulations of the United States (including, without limitation, the FAA), the States where the Aircraft is used or is located, and of all other governmental, regulatory, or judicial bodies

applicable to the use, operation, maintenance, overhauling, or condition of the Aircraft, or any part thereof, and with all requirements under any licenses, permits, or certificates relating to the use or operation of the Aircraft which are issued to Debtor or to any other person having operational control of the Aircraft; provided, however, that Debtor may, in good faith and by appropriate legal or other proceedings, contest the validity of any such statutes, laws, ordinances or regulations, or the requirements of any such licenses, permits, or certificates, and pending the determination of such contest may postpone compliance therewith, unless the rights of Lender hereunder are or may be materially adversely affected thereby.  Without the prior written consent of Lender, Debtor shall not make any alterations, modifications or attachments to the Aircraft which reduces the value or utility thereof..

(b)    Debtor agrees not to operate or locate the Aircraft or to allow it to be operated or located (i) in any area excluded from coverage by any insurance policy in effect with respect to Aircraft and Engines required pursuant to Section 14 hereof, (ii) in areas that are war zones or recognized as, in Debtor's reasonable judgment, threatened or actual areas of hostilities, or (iii) in any area which, for whatever reason, to a prudent operator of similar aircraft or engines, utilizing an appropriate manner of operations, would present an unreasonable risk of harm to the Aircraft or Engines or to passengers on the Aircraft. Notwithstanding the foregoing, in no event shall the Aircraft be absent from the United States and its Caribbean possessions and territories one hundred eighty (180) days or more in the aggregate in any calendar year.  Debtor shall furnish Lender with such information relating to the use of the Collateral outside the United States as Lender may request from time to time.  Debtor shall execute, deliver and file any and all documents and instruments which Lender may reasonably request to perfect, register, confirm and protect its interests in the Collateral.  Debtor further covenants and agrees to pay any expenses in connection with any such perfecting, registering, confirming and protecting the interests of Lender in Collateral, including, without limitation, reasonable attorneys' fees.

## SECTION 13    MAINTENANCE AND REPAIR.

(a)    Maintenance.   Debtor shall, at its expense:  (i) maintain and keep the Collateral in a manner consistent with prudent industry practice and in as good condition, repair and appearance as it is on the date of the issuance of the Note, ordinary wear and tear excepted;  (ii) maintain and keep the Aircraft in good order and repair and airworthy condition in accordance with the requirements of each of the manufacturers' manuals and mandatory service bulletins and each of the manufacturers' non-mandatory service bulletins which relate to airworthiness; (iii) replace in or on the Airframe, any and all Engines, parts, appliances, instruments or accessories which may be worn out, lost, destroyed or otherwise rendered unfit for use; (iv) without limiting the foregoing, cause to be performed on the Aircraft, all inspections and procedures required under applicable airworthiness directives, federal aviation regulations and special federal aviation regulations, the compliance date of which shall occur prior to the payment in full of the Obligations and satisfaction of all obligations of Debtor under all Swap Obligations and the release of the lien of this Agreement; and (v) at the request of Lender, enter into or cause to be entered into, manufacturer's or supplier's standard maintenance contracts satisfactory to Lender covering the Aircraft and shall comply with all obligations thereunder, and shall furnish evidence to Lender of such signed maintenance agreement (substitute maintenance may be used if necessary and if first approved in writing by Lender).  Debtor shall be responsible for all required inspections of the Aircraft and licensing or re-licensing of the Aircraft in accordance with all applicable FAA and other governmental requirements.  Debtor shall at all times cause the Aircraft to have, on board and in a conspicuous location, a current certificate of airworthiness issued by the FAA and shall take all steps necessary to ensure that the Aircraft remains certificated by the FAA with an appropriate certificate of airworthiness.  All inspections, maintenance, modifications, repairs, and overhauls of the Aircraft (including those performed on the Airframe, the Engines, and/or any components, appliances, accessories, instruments, or equipment) shall be performed by personnel authorized by the FAA to perform such services and the Aircraft shall be flown and operated only by pilots and operators who are properly and currently certificated, licensed and qualified under, and in compliance with all applicable rules and regulations.

(b)    Replacement.

(i)    If any Engine, component, appliance, accessory, instrument, equipment or part of the Aircraft shall suffer an event of loss (other than in connection with an actual, constructive

91995

or compromised total loss of the Airframe) or reach such a condition as to require overhaul, repair or replacement, for any cause whatever, in order to comply with the standards for maintenance and other provisions set forth in this Agreement, Debtor may: (A) install on the Aircraft such items of substantially the same type (and with respect to an Engine, of the same make and model, or otherwise comparable engine acceptable to Lender and compatible with the other Engine(s)) and with a fair market value, remaining useful life and utility at least equal to, and in as good operating condition as, the item it is replacing (assuming such replaced item was of the value and utility and in the condition and repair as required by the terms hereof immediately prior to its replacement) in temporary replacement, pending overhaul or repair of the unsatisfactory item; provided, however, that such temporary replacement items must be in such a condition as to be permissible for use upon the Aircraft in accordance with the standards for maintenance and other provisions set forth in this Agreement; provided, further, however, that Debtor must, at all times, retain unencumbered title (subject to liens of mechanics, materialmen and other vendors, which are extinguished in normal course of business) to any and all items temporarily removed; or (B) install on the Aircraft such items of substantially the same type (and with respect to an Engine, of the same make and model, or otherwise comparable engine acceptable to Lender and compatible with the other Engine(s)) and with a fair market value, remaining useful life and utility at least equal to, and in as good operating condition as, the item it is replacing (assuming such replaced item was of the value and utility and in the condition and repair as required by the terms hereof immediately prior to permanent replacement); provided, however, that such permanent replacement items must be in such condition as to be permissible for use upon the Aircraft in accordance with the standards for maintenance and other provisions set forth in this Agreement; provided, further, however, that Debtor must first comply with each of the requirements of clause (ii) of this Section 13(b).

(ii)    In the event that during the effectiveness of this Agreement, Debtor shall be required or permitted to install upon the Airframe or any Engine, components, appliances, accessories, instruments, engines, equipment or parts in permanent replacement of those then installed on the Airframe or such Engine, Debtor may do so provided that, in addition to any other requirements provided for in this Security Agreement: (A) Lender is not divested of its security interest in and lien upon or International Interest in any item removed from the Aircraft and that no such removed item shall be or become subject to the lien, claim, International Interest or Prospective International Interest of any person, unless and until such item is replaced by an item of the type and condition required by this Agreement, title to which, upon its being installed or attached to the Airframe, is validly vested in Debtor, free and clear of any liens, claims, International Interests or Prospective International Interests of any kind or nature, of any person other than Lender; (B) Debtor's title to every substituted item shall be free and clear of all liens, charges and encumbrances and immediately be and become subject to the security interest and lien of Lender and each of the provisions of this Agreement, and each such item shall remain so encumbered and so subject unless it is, in turn, replaced by a substitute item in the manner permitted herein; (C) if such substitution is in respect to an Engine, Debtor causes a supplement to this Agreement, in form and substance satisfactory to Lender, subjecting the substitute engine to the lien of this Agreement, to be filed for recordation with the FAA and creating in favor of Lender an International Interest in such substitute engine to be registered with the International Registry; (D) if an item is removed from the Aircraft and replaced in accordance with the requirements of this Security Agreement, including the terms and conditions of subclause (A), (B) and (C) hereinabove, and if Debtor takes such other actions and furnishes such other certificates and documents as Lender may request in order that such substitute item be duly and properly subject to the lien of this Agreement, then the item which is removed shall thereupon, and only thereupon, be free and clear of the security interest created hereby and lien of Lender.

**SECTION 14 RISK OF LOSS AND INSURANCE.**

(a)     Risk of Loss.     Debtor shall bear all risk of loss with respect to the Collateral. The injury to or loss of Collateral, either partial or total, shall not release Debtor from payment or other performance hereof. Upon the loss, theft, destruction or rendering permanently unfit for use of the Aircraft (or the Airframe and one or more Engines), Debtor shall forthwith (and in any event within five (5) days after such occurrence) give Lender written notice of such occurrence and Debtor shall on the first to occur of (x) the date of receipt of the insurance proceeds with respect to such occurrence, or (y) the sixtieth (60th) day after such occurrence, pay to Lender the outstanding principal amount of the Note an all other Obligations and, at the option of any Lender Affiliate, all Swap Obligations.

(b)     Insurance.

     (i)   Debtor shall maintain at its sole cost and expense insurance on the Aircraft covering such risks with respect to domestic and foreign use of the Aircraft and in such amounts and with such insurance companies as shall be satisfactory to Lender, including without limitation, (A) all-risk ground and flight aircraft hull insurance covering the Aircraft, and all-risk coverage with respect to the Aircraft or any Engines or parts while removed from the Aircraft, including foreign object damage whether resulting from ingestion or otherwise, and war risk (including government confiscation, hijacking and other acts of terrorism) protection, in amounts at all times satisfactory to Lender, and (B) public liability insurance with respect to third party bodily injury and property damage (including without limitation contractual liability, cargo liability, war risk (including government confiscation, hijacking and other acts of terrorism) passenger legal liability and property damage coverage) in an amount not less than $25,000,000 per occurrence or $2,500,000 per seat per occurrence, whichever is greater. Such insurance shall be with such deductibles, in such form and with such insurance companies of recognized responsibility as is satisfactory to Lender and which is usually carried with respect to corporate aircraft by corporations of established reputation owning or operating corporate aircraft similar to the Aircraft. Lender reserves the right to require Debtor to obtain higher liability limits.

     (ii)  All policies of insurance required to be carried in accordance with this Section 14 shall (A) require thirty (30) days' prior written notice to Lender of cancellation, lapse or material change in coverage and ten (10) days' prior written notice in the case of non-payment of premium, (B) name Lender as loss payee on the all-risk coverage and as an additional insured with respect to all such liability coverage, (C) provide that, in respect of the interest of Lender in such policies, the insurance shall not be invalidated by any action or inaction of Debtor or any other person, (D) with respect to the all-risk coverage set forth in Section 14(b)(i)(A) only, insure Lender regardless of any breach or violation of any warranty, declaration or condition contained in such policy (or in the application therefor or in any other document submitted to the insurer in connection therewith) by Debtor or by any other person, (E) provide that such insurance is primary without right of contribution from any other insurance which might otherwise be available to Lender, (F) provide that, in the event of any property loss payment under a policy, the insurer shall waive any rights of subrogation against Lender and in the event of any payment under a policy, the insurer shall waive any setoff or counterclaim or any other deduction, whether by attachment or otherwise, and (G) include a cross-liability endorsement providing that inasmuch as the policies are written to cover more than one insured, all terms and conditions, insuring agreements and endorsements, with the exception of limits of liability, shall operate in the same manner as if there was a separate policy covering each insured.

     (iii) Debtor shall provide Lender with insurer's certifications in form and substance satisfactory to Lender with respect to the types, amounts and policy numbers of insurance in effect as of the date of execution and delivery of this Agreement. In the event that Debtor should, for any reason, fail to renew or cause to be renewed any such policy or contract of insurance, Lender shall have the option to pay the premiums on any such policy or contract of insurance, or to take out new insurance in such amounts, types, coverages, and terms as Lender may determine to be prudent,

and any sums paid therefore shall be payable by Debtor on demand, and shall be added to and be a part of and included in the Obligations.

(iv) Debtor shall not use or permit the Aircraft to be used in any manner or for any purpose excepted from or contrary to the requirements of any insurance policy or policies required to be carried and maintained hereunder or for any purpose excepted or exempted from or contrary to said insurance policies; and Debtor shall not do any other act or permit anything to be done which could reasonably be expected to invalidate or limit any such insurance policy or policies. Debtor shall bear the risk of loss to the extent of any deficiency in the effective insurance coverage with respect to loss or damage to the Aircraft.

(v) Debtor hereby assigns to Lender the proceeds of all such insurance and directs any insurer to make payments directly to Lender and the proceeds of such insurance, at the option of Lender, shall be applied: (A) toward the replacement, restoration or repair of the Aircraft, or (B) toward payment of the Obligations of Debtor hereunder and all amounts due and owing by Debtor under any Swap Agreements. Debtor hereby appoints Lender as Debtor's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment of loss or damage under any such insurance policy. Debtor hereby appoints Lender its attorney-in-fact, which appointment shall be irrevocable and coupled with an interest for so long as the Obligations are unpaid or there are any outstanding obligations under any Swap Agreements or any amounts due by Debtor thereunder, to file proof of loss and/or any other forms required to collect from any insurer any amount due from any damage or destruction of the Aircraft, to agree to and bind Debtor as to the amount of said recovery, to designate payee(s) of such recovery, to grant releases to insurer, to grant subrogation rights to any insurer, and to endorse any settlement check or draft. Debtor agrees not to exercise any of the foregoing powers granted to Lender without Lender's prior written consent.

**SECTION 15  FINANCING STATEMENTS, FURTHER ASSURANCES.** Debtor covenants that no financing statement (other than any filed by or for the benefit of Lender) covering any of Collateral or proceeds thereof is on file in any public filing office, that no International Interest or Prospective International Interest (other than that of Lender) is registered with the International Registry with respect to the Aircraft, that Debtor shall not consent to any International Interest or Prospective International Interest with respect to the Aircraft (other than any such interest in favor of the Lender), and that Debtor has not executed an IDERA with respect to the Aircraft in favor of any person (other than the Lender) which has not been discharged and removed from the FAA-Aircraft Registry. This Agreement, or a copy thereof, or any financing statement executed hereunder may be recorded. Debtor will perform, or will cause to be performed, upon the request of Lender, each and all of the following: (a) record, register and file this Agreement, as well as such notices, financing statements, and/or other documents or instruments and create, register, discharge, perfect, protect or preserve any International Interest of the Lender with respect to the Aircraft as may, from time to time, be requested by Lender to fully carry out the intent of this Agreement, with: (i)(a) the FAA in Oklahoma City, Oklahoma, and (b) the International Registry, either concurrent with the delivery and acceptance of the Aircraft or promptly after the execution and delivery of this Agreement; (ii) the appropriate government agency(ies) in the State of Debtor's formation; and (iii) such other administrations or governmental agencies, whether domestic or foreign, as may be determined by Lender to be necessary or advisable in order to establish, confirm, maintain and/or perfect the security interest and lien created hereunder, as a legal, valid, and binding, first priority security interest and lien upon the Collateral (including, without limitation, the International Interest in the Aircraft); (b) furnish to Lender evidence of every such discharge, recording, registering and filing; (c) execute and deliver or perform, or cause to be executed and delivered or performed, such further and other instruments and/or acts as Lender determines are necessary or required to fully carry out the intent and purpose of this Agreement or to subject the Collateral to the security interest and lien created hereunder, including, without limitation: (i) any and all acts and things (including, without limitation, the registering and discharging of electronic consents with the International Registry) which may be reasonably requested by Lender with respect to complying with, the laws and regulations of the FAA and the requirements of the Cape Town Treaty, or the laws and regulations of any of the various states or countries in which the Aircraft is or may fly over, operate in, or become located in or any other applicable law; and (ii) defending the title of Debtor to the Collateral by means of negotiation and, if necessary, appropriate legal proceedings, against each and every party claiming an interest

therein contrary or adverse to Debtor's title to same. In addition to the foregoing, Debtor hereby authorizes Lender, at the expense of Debtor, to prepare and file such financing statements (including renewal statements) or amendments thereof or supplements thereto or other instruments as the Lender may from time to time deem necessary or appropriate in order to perfect and maintain the security interests granted hereunder in accordance with the UCC. At Lender's request, Debtor agrees to affix to each Airframe and each Engine such plate, disk or other marking of customary size, bearing a legend acceptable to Lender evidencing the fact that such Airframe(s) and Engine(s) are subject to a lien in favor of Lender pursuant to the terms hereof.

SECTION 16    POWER OF ATTORNEY. Upon the occurrence of a Default Debtor hereby irrevocably appoints Lender as its attorney-in-fact and agent with full power of substitution and re-substitution for Debtor and in its name to do, at Lender's option, any one or more of the following acts: (i) to receive, open and examine all mail addressed to Debtor and to retain any such mail relating to the Collateral and to return to Debtor only that mail which is not so related; (ii) to endorse the name of Debtor on any checks or other instruments or evidences of payment or other documents, drafts, or instruments arising in connection with or pertaining to the Collateral, to the extent that any such items come into the possession of Lender; (iii) to execute such documents (including, but not limited to, a bill of sale) as may be necessary to transfer title to Collateral; (iv) to compromise, prosecute or defend any action, claim, or proceeding concerning the Collateral; (v) to do any and all acts which Debtor is obligated to do under this Agreement or under the Loan Documents; (vi) to exercise such rights as Debtor might exercise relative to the Collateral, including, without limitation, the leasing, chartering, or other utilization thereof; (vii) to give notice of Lender's security interest in and lien upon the Collateral, including, without limitation, notification to lessees and/or other account debtors of Lender's security interest in the rents and other payments due to Debtor relative to the Collateral, and the collection of any such rents or other payments; and (viii) to execute in Debtor's name and file any notices, financing statements, and other documents or instruments Lender determines are necessary or required to fully carry out the intent and purpose of this Agreement or to perfect Lender's security interest and lien in and upon the Collateral. Debtor hereby ratifies and approves all that Lender shall do or cause to be done by virtue of the power of attorney granted herein and agrees that neither Lender, nor any of its employees, agents, officers, or its attorneys, will be liable for any acts or omissions or for any error of judgment or mistake of fact or law made while acting pursuant to the provisions hereof and in good faith. Upon the appointment, if any, of Lender as Debtor's attorney-in-fact, and each and every one of Lender's rights and powers in connection therewith, being coupled with an interest, are and shall remain irrevocable until the Default is cured as determined by Lender in its sole discretion, or, if not cured, the Obligations have been fully paid and performed and all Swap Obligations have terminated or matured and all amounts due and owing thereunder by Debtor have been paid in full.

SECTION 17   TRANSFER OF COLLATERAL. Lender may assign its rights hereunder and in the Collateral or any part thereof to any assignee who shall thereupon become vested with all the powers and rights herein given to Lender with respect to the property so transferred and delivered, and Lender shall thereafter be forever relieved and fully discharged from any liability with respect to such property so transferred, but with respect to any property not so transferred, Lender shall retain all rights and powers hereby given.

SECTION 18   INSPECTION, BOOKS AND RECORDS. Debtor will at all times keep accurate and complete records covering each item of Collateral, including the proceeds therefrom. Lender, or any of its agents, shall have the right, at intervals to be determined by Lender and without hindrance or delay, at Debtor's expense, to inspect, audit, and examine the Collateral and to make copies of and extracts from the books, records, journals, orders, receipts, correspondence and other data relating to the Collateral, Debtor's business or any other transaction between the parties hereto. Debtor will at its expense furnish Lender copies thereof upon request. For the further security of Lender, it is agreed that Lender has and is hereby granted (for itself and any Lender Affiliate) a security interest in all books and records of Debtor pertaining to the Collateral.

SECTION 19   ATTORNEYS' FEES AND OTHER COSTS OF COLLECTION. Debtor shall pay all of Lender's reasonable expenses incurred in enforcing this Agreement and in preserving and liquidating the Collateral, including, but not limited to, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred with or without the commencement of a suit, trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

SECTION 20   DEFAULT. If any of the following occurs, a default ("Default") under this Agreement, the Note and the other Loan Documents shall exist: Nonpayment; Nonperformance. The failure of timely payment or

performance of the Obligations or Default under any Note or any other Loan Document, or a default under any Swap Obligation in accordance with the specific terms of the documents governing such Swap Obligations. **Loan Document Default.** A default under this Agreement, any Note or any other Loan Document which is not cured within any applicable cure period. **False Warranty.** A warranty or representation made or deemed made in the Loan Documents or furnished Lender by or on behalf of Debtor or any Guarantor in connection with any Loan subject to this Agreement proves materially false, or if of a continuing nature, becomes materially false. **Cross Default.** At Lender's option, any default in payment or performance of any obligation under any other loans, contracts or agreements of Debtor, any Subsidiary or Affiliate of Debtor, any Guarantor, or any general partner of or the holder(s) of the majority ownership interests of Debtor with Lender or any Lender Affiliate ("<u>Affiliate</u>", when used with respect to affiliates of the Debtor, shall have the meaning as defined in 11 U.S.C. § 101, as in effect from time to time; "<u>Subsidiary</u>" shall mean any business in which Debtor holds, directly or indirectly, a controlling interest). **Cessation; Bankruptcy.** The death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any bankruptcy or insolvency proceeding by or against Debtor, its Subsidiaries or Affiliates, if any, any Guarantor, or any general partner of or the holder(s) of the majority ownership interests of Debtor, any Guarantor, or any party to the Loan Documents, other than Lender. **Change of Control.** The occurrence of any of the following (each, a "<u>Prohibited Transfer</u>"): (i) a merger, consolidation or other corporate reorganization or change in the identity of Debtor or any Guarantor, (ii) a sale, lease, transfer or other disposition, whether or not in a taxable transaction, of (a) all or a substantial portion of the assets of Debtor or any Guarantor, or (b) an operation, line of business, division, or subsidiary that represents more than a substantial portion of the consolidated revenues of Debtor or any Guarantor, with substantial portion meaning, in either case, greater than twenty percent (20%), (iii) (A) if Debtor or any Guarantor is a private company, the owners of the capital stock or other units of ownership of Debtor or any Guarantor on the date of this Agreement entitled to vote for the election of the board of directors of Debtor or any Guarantor, as applicable or other similar governing body cease to own or do not have the unencumbered right to vote in the aggregate at least ninety percent (90%) of such capital stock or other ownership interest of Debtor or any Guarantor, as applicable and (B) if Debtor or any Guarantor is a public company and as a result of or in connection with a material change in ownership of Debtor's or any Guarantor's capital stock, Debtor's or any Guarantor's Total Liabilities to Tangible Net Worth ratio equals or exceeds twice the ratio of Debtor's or any Guarantor's Total Liabilities to Tangible Net Worth ratio as of the date of this Agreement. A Default shall also be deemed to have occurred if a Prohibited Transfer occurs with respect to any fifty percent (50%) or greater owner of Debtor (or Debtor's permitted assignee in the event of any assignment) or any Guarantor. **Material Adverse Change.** Lender determines in good faith, in its sole discretion, that the prospects for payment or performance of the Obligations are impaired or there has occurred a material adverse change in the business or prospects of Debtor, financial or otherwise. **Collateral Sale, Lease or Encumbrance.** Any sale, lease, or encumbrance of the Collateral or any portion thereof, including, without limitation, the creation or registration of (whether or not consented to) any International Interest or Prospective International Interest against the Aircraft, not specifically permitted herein without prior written consent of Lender. **Levy, Seizure or Attachment.** The making of any levy, seizure, or attachment on or of the Collateral which is not removed within ten (10) days. **Unauthorized Termination.** Any attempt to terminate, revoke, rescind, modify, or violate the terms of this Agreement, any Note, any Guaranty, or any other Loan Document without the prior written consent of Lender.

**GRACE PERIOD. Grace Period.** The failure of timely payment of the Obligations shall not be a Default until three (3) days after such payment is due.

**SECTION 21 REMEDIES ON DEFAULT (INCLUDING POWER OF SALE).** If a Default occurs hereunder Lender shall have all the rights and remedies upon a default of a secured party under the Uniform Commercial Code, any applicable rights and remedies specified under the Cape Town Treaty, and all other rights and remedies under applicable law. Without limitation thereto, Lender shall have the following rights and remedies (for itself and on behalf of any Lender Affiliate): (i) to exercise its rights pursuant to the IDERA, which include, without limitation, the procurement of the de-registration of the Aircraft and the export and physical transfer of the Aircraft from the territory in which it is situated; (ii) to take immediate possession of the Collateral, without notice or resort to legal process, and for such purpose, to enter upon any premises on which the Collateral or any part thereof may be situated and to remove the same therefrom, or, at its option, to render the Collateral unusable or dispose of said Collateral on Debtor's premises; (iii) to require Debtor to assemble the Collateral and make it available to Lender at a place to be designated by Lender; (iv) to exercise its right of set-off or bank lien as to any monies of Debtor deposited in accounts of any nature maintained by Debtor with Lender or any Lender Affiliate,

without advance notice, regardless of whether such accounts are general or special; or (v) to dispose of the Collateral in any county or place to be selected by Lender, at either private or public sale (at which public sale Lender may be the purchaser) with or without having the Collateral physically present at said sale.

Any notice of sale, disposition or other action by Lender required by law and sent to Debtor at Debtor's address shown above, or at such other address of Debtor as may from time to time be shown on the records of Lender, at least ten (10) Business Days prior to such action, shall constitute commercially reasonable notice to Debtor. Notice shall be deemed given or sent when mailed postage prepaid to Debtor's address as provided herein. Lender shall be entitled to apply the proceeds of any sale or other disposition of the Collateral, and the payments received by Lender with respect to any of the Collateral, to the Obligations and the Swap Obligations in such order and manner as Lender may determine. Debtor waives any and all requirements that the Lender sell or dispose of all or any part of the Collateral at any particular time, regardless of whether Debtor has requested such sale or disposition.

SECTION 22  ACCOUNT AND CONTRACT DEBTORS.  Without limiting the provisions hereof dealing with Debtor's right to lease, transfer or otherwise encumber the Collateral, if a Default should occur, Lender shall have the right to notify any account and contract debtors obligated on any or all of the Collateral to make payment thereof directly to Lender and Lender may take control of all proceeds of any such Collateral, which rights Lender may exercise at any time without waiving said Default.  The cost of such collection and enforcement, including attorneys' fees and expenses, shall be borne solely by Debtor whether the same is incurred by Lender (and, if so incurred, such amounts shall be added to the Obligations) or Debtor.  If a Default should occur or upon demand of Lender, Debtor will, upon receipt of all checks, drafts, cash and other remittances in payment on the Collateral, deposit the same in a special bank account maintained with Lender, or a Lender Affiliate, over which Lender has the sole power of withdrawal.  If a Default should occur, no discount, credit, or allowance shall be granted by Debtor to any account or contract debtor and no return of merchandise shall be accepted by Debtor without Lender's consent.  Lender may, after a Default, settle or adjust disputes and claims directly with any account and/or contract debtors for amounts and upon terms that Lender considers advisable, and in such cases Lender will credit the Obligations and the Swap Obligations, as applicable, with the net amounts received by Lender, after deducting all of the expenses incurred by Lender.  Debtor warrants that Collateral consisting of contract rights, chattel paper, accounts, or general intangibles is:  (i) genuine and enforceable in accordance with its terms except as limited by law; (ii) not subject to any defense, set-off, claim or counterclaim of a material nature against Debtor except as to which Debtor has notified Lender in writing; and (iii) not subject to any other circumstances that would impair the validity, enforceability, value, or amount of such Collateral except as to which Debtor has notified Lender in writing. Debtor shall not amend, modify or supplement any lease, contract or agreement contained in Collateral or waive any provision therein, without prior written consent of Lender. Debtor shall provide Lender with the original of any chattel paper which constitutes Collateral and agrees to mark any copies of such chattel paper as such and/or to affix thereto a legend noting that such chattel paper is subject to a security interest in favor of Lender pursuant to the terms hereof.

SECTION 23  GOVERNMENT CONTRACTS.  If any Collateral covered hereby arises from obligations due to Debtor from any governmental unit or organization, Debtor shall immediately notify Lender in writing and execute all documents and take all actions demanded by Lender to ensure recognition by such governmental unit or organization of the rights of Lender in the Collateral.

SECTION 24  INSTRUMENTS, CHATTEL PAPER, NEGOTIABLE DOCUMENTS.  Any Collateral that is instruments, chattel paper, and negotiable documents will be properly assigned to, deposited with and held by Lender, unless Lender shall hereafter otherwise direct or consent in writing.  Lender may, without notice, before or after maturity of the Obligations and the termination or maturity of all Swap Obligations and the payment in full by Debtor of all amounts due and owing thereunder, exercise any or all rights of collection, conversion, or exchange and other similar rights, privileges and options pertaining to Collateral, but shall have no duty to do so.

SECTION 25  REMEDIES ARE CUMULATIVE.  No failure on the part of Lender to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any right, power or remedy.  The remedies herein provided are cumulative and are not exclusive of any remedies provided by law, in equity, or in other Loan Documents, including, without limitation, the Note and any Guaranty, or in any agreements or documents evidencing the Swap Obligations.

**SECTION 26 INDEMNIFICATION.** Debtor shall protect, indemnify and save harmless on an after-tax basis Lender from and against all losses, liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Damages") imposed upon, incurred by or asserted against Lender or any Lender Affiliate on account of (i) the Loan Documents, the Swap Obligations, or any failure or alleged failure of Debtor or any Guarantor to comply with any of the terms or representations of this Agreement, any Loan Document, any agreement or document evidencing the Swap Obligations, or the breach of any provisions thereof; (ii) any claim of loss or damage to the Collateral or any injury or claim of injury to, or death of, any person or property that may be occasioned by any cause whatsoever pertaining to the Collateral or the use, occupancy or operation thereof; (iii) any failure or alleged failure of Debtor to comply with any law, rule or regulation applicable to the Collateral or the use, occupancy or operation of the Collateral (including, without limitation, the failure to pay any taxes, fees or other charges), (iv) any Damages whatsoever by reason of any alleged action, obligation or undertaking of Lender relating in any way to or any matter contemplated by the Loan Documents, or the Swap Obligations, or (v) any claim for brokerage fees or such other commissions relating to the Collateral or any of the Obligations or Swap Obligations; provided that such indemnity shall be effective only to the extent of any Damages that may be sustained by Lender, or any Lender Affiliate, as applicable, in excess of any net proceeds received by it from any insurance of Debtor (other than self-insurance) with respect to such Damages. In addition, and not in limitation of the foregoing, Debtor shall pay any civil penalty or fine assessed by the Office of Foreign Assets Control against Lender or any Lender Affiliate, and all reasonable costs and expenses (including attorneys' fees and disbursements) incurred in connection with defense thereof, as a result of the making of any Loan or the acceptance of payments due thereunder. Nothing contained herein shall require Debtor to indemnify Lender or any Lender Affiliate for any Damages resulting from its gross negligence or its willful misconduct. The indemnity provided for herein shall survive payment of the Obligations and the Swap Obligations and shall extend to each Lender Affiliate and the officers, directors, employees and duly authorized agents of Lender and each Lender Affiliate. In the event Lender incurs any Damages arising out of or in any way relating to the transaction contemplated by the Loan Documents (including any of the matters referred to in this section), the amounts of such Damages shall be added to the Obligations, shall bear interest, to the extent permitted by law, at the interest rate borne by the Obligations from the date incurred until paid and shall be payable on demand.

**SECTION 27 MISCELLANEOUS PROVISIONS.** Assignment. This Agreement, the Note and the other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Lender's interests in and rights under this Agreement, the Note and the other Loan Documents are freely assignable, in whole or in part, by Lender and Debtor hereby expressly consents in advance to any assignment by Lender of this Agreement and the other Loan Documents (including all of the associated rights therein) and Lender's International Interest created hereunder and the other Loan Documents In addition, nothing in this Agreement, the Note or any of the other Loan Documents shall prohibit Lender from pledging or assigning the Note or any of the other Loan Documents or any interest therein to any Federal Reserve Bank. Debtor shall not assign its rights and interest hereunder or under any other Loan Document without the prior written consent of Lender, and any attempt by Debtor to assign without Lender's prior written consent is null and void. Any assignment shall not release Debtor from the Obligations, unless Debtor has Lender's prior written consent to such release. Applicable Law; Conflict Between Documents. This Agreement shall be governed by and construed under the law of the State of North Carolina (the "Jurisdiction") without regard to that Jurisdiction's conflict of laws principles, except to the extent that the UCC requires the application of the law of a different jurisdiction. If any terms of this Agreement conflict with the terms of any commitment letter or loan proposal, the terms of this Agreement shall control. If any terms of this Agreement conflict with the provisions of the Cape Town Treaty, the terms of this Agreement shall control to the extent permitted by law. Swap Agreements. All swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), if any, between Debtor and Lender or any Lender Affiliate are independent agreements governed by the written provisions of said swap agreements, which will remain in full force and effect, unaffected by any repayment, prepayment, acceleration, reduction, increase or change in the terms of any Loan Document, except as otherwise expressly provided in said written swap agreements, and any payoff statement from Lender relating to the Loan shall not apply to said swap agreements unless expressly referred to in such payoff statement. Jurisdiction. Debtor irrevocably agrees to non-exclusive personal jurisdiction in the state of North Carolina and the Debtor and the Lender agree that the courts of the State of North Carolina have non-exclusive personal jurisdiction in respect of a claim brought under the Cape Town Treaty relating to the Aircraft. Severability. If any provision of this Agreement, the Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such

prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of such document. **Notices.** Any notices to Debtor shall be sufficiently given, if in writing and mailed or delivered to the Debtor's address shown above or such other address as provided hereunder, and to Lender, if in writing and mailed or delivered to Lender at Lender's address shown above, or such other address as Lender may specify in writing from time to time. Notices to Lender must include the mail code. In the event that Debtor changes its address at any time prior to the date the Obligations are paid in full, Debtor agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to Debtor, Guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "<u>person</u>" shall mean any individual, person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Advances.** Lender may, in its sole discretion, make other advances which shall be deemed to be advances under a Note, even though the stated principal amount of this Agreement or such Note may be exceeded as a result thereof. **Posting of Payments.** All payments received during normal banking hours after 2:00 p.m. local time at the office of Lender first shown above shall be deemed received at the opening of the next banking day. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which when taken together shall constitute one agreement. **Joint and Several Obligations.** If there is more than one Debtor, each is jointly and severally obligated. **Fees, Expenses and Taxes.** Debtor shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time, and all reasonable costs and expenses related to (a) procuring certified charter documents and good standing certificates of Debtor and any Guarantor, (b) title and lien searches related to Debtor and the Collateral, including, without limitation, those at the FAA and at the International Registry, (c) lien and International Interest application and registration fees and financing statement filing fees, (d) stamp or documentary charges with respect to this Agreement, (e) attorneys' fees related to the preparation, negotiation, execution, enforcement and interpretation of this Agreement and any Guaranty, and (f) any similar out-of-pocket costs and expenses. **Consent.** Debtor and the Lender consent to the registration of the International Interest created under Section 3 of this Agreement and any other International Interest created pursuant hereto in favor of the Lender, including, without limitation, under Section 13(b) hereof, with the International Registry. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING LENDER BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED OR SECURED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY FOR, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE.

SECTION 28   **FINAL AGREEMENT.** This Agreement, the Note and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

SECTION 29   **ARBITRATION.** Upon demand of any party hereto, whether made before or after institution of any judicial proceeding, any claim or controversy arising out of or relating to the Loan Documents between parties hereto (a "<u>Dispute</u>") shall be resolved by binding arbitration conducted under and governed by the Commercial Financial Disputes Arbitration Rules (the "<u>Arbitration Rules</u>") of the American Arbitration Association (the "<u>AAA</u>") and the Federal Arbitration Act. Disputes may include, without limitation, tort claims, counterclaims, a dispute as to whether a matter is subject to arbitration, claims brought as class actions, or claims arising from documents executed in the future. A judgment upon the award may be entered in any court having jurisdiction. Notwithstanding the foregoing, this arbitration provision does not apply to disputes under or related to swap agreements. **Special Rules.** All arbitration hearings shall be conducted in the city named in the address of Lender first stated above. A hearing shall begin within ninety (90) days of demand for arbitration and all hearings shall conclude within one hundred twenty (120) days of demand for arbitration. These time limitations may not be

extended unless a party shows cause for extension and then for no more than a total of sixty (60) days.  The expedited procedures set forth in Rule 51 et seq. of the Arbitration Rules shall be applicable to claims of less than $1,000,000.00.  Arbitrators shall be licensed attorneys selected from the Commercial Financial Dispute Arbitration Panel of the AAA.  The parties do not waive applicable Federal or state substantive law except as provided herein.  Preservation and Limitation of Remedies.  Notwithstanding the preceding binding arbitration provisions, the parties agree to preserve, without diminution, certain remedies that any party may exercise before or after an arbitration proceeding is brought.  The parties shall have the right to proceed in any court of proper jurisdiction or by self-help to exercise or prosecute the following remedies, as applicable: (i) all rights to foreclose against any real or personal property or other security by exercising a power of sale or under applicable law by judicial foreclosure including a proceeding to confirm the sale; (ii) all rights of self-help including peaceful occupation of real property and collection of rents, set-off, and peaceful possession of personal property; (iii) obtaining provisional or ancillary remedies including injunctive relief, sequestration, garnishment, attachment, appointment of receiver and filing an involuntary bankruptcy proceeding; and (iv) when applicable, a judgment by confession of judgment.  Any claim or controversy with regard to any party's entitlement to such remedies is a Dispute.  Waiver of Jury Trial.  THE PARTIES ACKNOWLEDGE THAT BY AGREEING TO BINDING ARBITRATION THEY HAVE IRREVOCABLY WAIVED ANY RIGHT THEY MAY HAVE TO JURY TRIAL WITH REGARD TO A DISPUTE AS TO WHICH BINDING ARBITRATION HAS BEEN DEMANDED.

[The remainder of this page is intentionally left blank.]

IN WITNESS WHEREOF, Debtor, on the day and year first written above, has caused this Agreement to be executed under seal.

DEBTOR:

VISTA AVIATION, LLC.

By:

Name: Eduard de Guardiola

Title: Member

LENDER:

WACHOVIA FINANCIAL SERVICES, INC.

By:

Name:        M. Randall Ross

Title:        Vice President

IN WITNESS WHEREOF, Debtor, on the day and year first written above, has caused this Agreement to be executed under seal.

DEBTOR:

VISTA AVIATION, L.L.C.

By: _____
Name: _____
Title: _____

LENDER:

WACHOVIA FINANCIAL SERVICES, INC.

By: _M. Randall Ross_____
Name: _____M. Randall Ross_____
Title: _____Vice President_____

State of _Georgia_

County of _Fulton_

I, _Gabrielle E Howard_, a Notary Public in and for said state and county, do hereby certify that _Eduard de Guchbols_ personally appeared before me this day and acknowledged his due execution of the foregoing Aircraft Security Agreement.

Witness my hand and official seal this _25th_ day of April, 2006.

_gabrielle E Howard_
Notary Public

My commission expires:

_____

[NOTARY SEAL]

Notary Public
My Commission Expires April 12, 2009
Fulton County, Georgia

## Annex A
## To Aircraft Security Agreement

### DEFINITIONS

"Aircraft" means and includes (a) the Airframe, (b) the Engines, and (c) any and all manuals, logbooks, flight records, maintenance records, and other historical information or records of Debtor relating to (a) or (b).

"Airframe" means and includes that certain airframe identified on Schedule I attached hereto and incorporated herein by reference, together with any and all parts, appliances, components, instruments, accessories, accessions, attachments, equipment, or avionics (including, without limitation, radio, radar, navigation systems, or other electronic equipment but excluding Engines or engines installed thereon) installed in, attached to, appurtenant to, or delivered with or in respect of such Airframe.

"Business Day" means any day other than Saturday, Sunday or other day on which commercial banks are authorized or obligated to close under the laws of the United States, New York or North Carolina.

"Cape Town Treaty" has the meaning provided in 49 U.S.C. § 44113(1).

"Collateral" shall have the meaning provided in Section 3 hereof.

"Commencement Date" means the date on which the Loan is made.

"Default" shall have the meaning provided in Section 20 hereof.

"Engine" means and includes those certain aircraft engines identified on Schedule I, together with any and all parts, appliances, components, accessories, accessions, attachments or equipment installed on, appurtenant to, or delivered with or in respect of such Engines. The term "Engine" shall also refer to any replacement aircraft engine which Debtor is required or permitted, under this Security Agreement, to install upon the Airframe and as to which Debtor complies with each of the applicable requirements contained herein.

"FAA" means the United States Federal Aviation Administration and any successor agency or agencies thereto.

"Federal Aviation Act" means Part A of Subtitle VII of Title 49 of the United States Code, as amended and modified from time to time.

"Guaranty" means any guaranty executed in connection with this Agreement.

"Guarantor" means any party acting as a guarantor pursuant to a Guaranty.

"IDERA" shall have the meaning provided in Section 1 hereof.

"International Interest" means an 'international interest' as such term is defined in the Cape Town Treaty.

"International Registry" has the meaning provided in 49 U.S.C. § 44113(3).

"Lender Affiliate" means Lender's parent corporation, any of Lender's or its parent corporation's subsidiary corporations or any affiliated company of any of them.

"Loan Documents" means this Agreement, all documents executed in connection with or related to the Loan subject to this Agreement, including the Note, any IDERA, and any other documents executed in connection therewith or related thereto, and may include, without limitation, each Guaranty, security instruments, financing statements, mortgage instruments, any renewals or modifications and other Security Documentation, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time).

"Note" shall have the meaning provided in the preamble hereof.

"Obligations" means any and all indebtedness evidenced by the Note, all indebtedness and other obligations under this Agreement, and all other obligations under any other Loan Document(s).

"Prospective International Interest" means a 'prospective international interest' as such term is defined in the Cape Town Treaty.

"Security Agreement" means this Aircraft Security Agreement between Debtor and Lender.

"Security Documentation" shall have the meaning provided in Section 1 hereof.

"Swap Obligations" means all obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Debtor and Lender or any Lender Affiliate executed in connection with or related to the Loan Documents.

"Tangible Net Worth" means, as of any date of determination, the sum of the capital stock and additional paid-in capital (net of treasury stock) plus retained earnings of Debtor or any Guarantor, as applicable, and its subsidiaries, minus intangible assets (including, without limitation, franchises, licenses, patents, patent applications, trademarks, trade names, copyrights, service marks, brand names, goodwill and research and development expenses) determined in conformity with generally accepted accounting principles.

"Total Liabilities" means all liabilities of Debtor or any Guarantor, as applicable, including capitalized leases and all reserves for deferred taxes, and other deferred sums appearing on the liabilities side of a balance sheet and all obligations as lessee under off-balance sheet synthetic leases and or operating leases (discounted using the Bank Prime rate of interest published in the then current Federal Reserve H.15 Statistical Release) of Debtor or any Guarantor, as applicable, less debt fully subordinated to Lender on terms and conditions acceptable to Lender, all in accordance with generally accepted accounting principles applied on a consistent basis.

"UCC" means the Uniform Commercial Code as presently and hereafter enacted in the Jurisdiction. Any term used in this Agreement and in any financing statement filed in connection herewith which is defined in the UCC and not otherwise defined in this Agreement or any other Loan Document has the meaning given to the term in the UCC.

## SCHEDULE I

## DESCRIPTION OF AIRFRAME AND ENGINES
## AND PRIMARY HANGAR LOCATION

### AIRFRAME

| Manufacturer | Model | U.S. Registration No. | Mfg. Serial No. |
|---|---|---|---|
| Hawker Siddeley | HS.125-700A | N323JK | NA-0234 |

(which can transport at least (8) persons (including crew), or goods in excess of 2750 kilograms)

### ENGINES

| Manufacturer | Model | Mfg. Serial No. |
|---|---|---|
| Garrett | TFE 731-3R-1H | P80233 |
| Garrett | TFE 731-3R-1H | P84109 |

(each of which Engine has 550 or more rated takeoff and at least 1750 pounds of thrust or its equivalent)

### HANGAR LOCATION

The Airframe and Engines shall be primarily domiciled, based and hangared at the following address, and shall not be primarily based and domiciled elsewhere without the prior written consent of Lender:

1755 McCollum Parkway
Entrance C
Kennesaw, Georgia   30144

Aircraft Security Agreement_Single Advance_Fixed at Funding_Capetown_022706_Vista Aviation, LLC

**WACHOVIA**

### EXHIBIT A
### FORM OF PROMISSORY NOTE
### (FIXED RATE, LEVEL PAYMENTS)

$_____.00

_____, 20_____

[DEBTOR NAME]_____
[DEBTOR ADDRESS]_____
(Individually and collectively, "Debtor")

Wachovia Financial Services, Inc.
(a subsidiary of Wachovia Bank, National Association)
One Wachovia Center
Mail Code NC0738
Charlotte, North Carolina 28288-0738
(Hereinafter referred to as "Lender")

Debtor promises to pay to the order of Lender, in lawful money of the United States of America, at its office indicated above or wherever else Lender may specify, the sum of _____ and No/100 Dollars ($_____.00) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**USE OF PROCEEDS.** Debtor shall use the proceeds of the loan evidenced by this Note to purchase or refinance the Aircraft described in that certain Aircraft Security Agreement dated _____, 20_____, (the "Aircraft Security Agreement").

**SECURITY.** Debtor has granted Lender a security interest in the Collateral described in the Loan Documents, including, but not limited to, personal property collateral described in the Aircraft Security Agreement (the "Collateral"). The Collateral is held by Lender as security for the Obligations. The provisions of this Note are subject to the Aircraft Security Agreement, and all capitalized terms used herein and not otherwise defined herein shall have the meanings assigned in the Aircraft Security Agreement. Reference is hereby made to the Aircraft Security Agreement for a supplemental statement of the rights of the holder of, and the nature and extent of the security for, this Note.

**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of the Loan evidenced by this Note (the "Interest Rate") from and including the Commencement Date of such Loan to the last Payment Date (as defined below), at the Fixed Rate for such Loan. [ALTERNATIVE 1]["Fixed Rate" means the fixed rate of interest determined by the Lender on the Commencement Date for such Loan by increasing or decreasing the fixed rate (from an assumed interest rate of _____%) for each corresponding basis point change in the Funding Index Rate (defined below) from (a) ____, 20____ (the date quoted in Lender's Proposal Letter to Debtor) and (b) the date which is three (3) Business Days prior to the Commencement Date. "Funding Index Rate" means, as of any date of determination, [the [ ]-year US Interest Rate Swap (USSWAP) [ ] Index on Bloomberg][the [ ]-year US Interest Rate Swap as published in the Federal Reserve System's statistical release H.15, entitled "Selected Interest Rates" using the week ending rate for the corresponding like term from the latest available release] [the [.oo]% Treasury Note's yield to maturity of [0.00]% and maturing [Month/Year], as stated herein and [as published in The Wall Street Journal][on Bloomberg]. [ALTERNATIVE 2] ["Fixed Rate" means the fixed rate of interest determined by the Lender on the Commencement Date for such Loan by adding an assumed interest rate of ____%. The "Adjustment Amount" means the greater of (a) the change in the ___% Treasury Rate's yield to maturity of ___% and maturing ____, 20_____, as published in The Wall Street Journal (i) on ____, 20____ (the date quoted in Lender's Proposal Letter to Debtor) and (ii) on the date which is three (3) Business Days prior to the Commencement Date, or (b) the change in the [one] year LIBOR rate as published in The Wall Street Journal (i) on ____, 20____ (the date quoted in Lender's Proposal Letter to Debtor), and (ii) the date which is three (3) Business Days prior to the Commencement Date.] The Debtor shall agree in the Notice of Borrowing that the date on which

the Loan is made shall be the Commencement Date.  The Fixed Rate may be further adjusted by Lender in the event that the Loan is made on a date later than that set forth in such Notice of Borrowing.

**REPAYMENT TERMS.**  [INTEREST ONLY PERIOD] [From the date of this Note until and including [__months after] the Commencement Date, this Note shall be payable in consecutive [monthly] [quarterly] payments of accrued interest only, commencing on the [_____] day of the [third] month immediately succeeding the date of the first advance of such Loan and on the same day of each [month] [third month] thereafter.]  Commencing [one month][three months ][__months] from the Commencement Date, principal on the Loan and accrued interest shall be payable on each Payment Date (as defined below) in [_____ (____)] consecutive [monthly][quarterly] level payments (each payment to be inclusive of principal and interest) in the amount set forth in Schedule A attached hereto.  "Payment Date" shall mean the same calendar day of each [month][third month] as the calendar day on which the Commencement Date occurs, provided that any Payment Date that would otherwise fall on a day which is not a Business Day shall be extended to the next succeeding Business Day, unless such Business Day falls in another calendar month, in which case such Payment Date shall be on the next preceding Business Day. In any event, all principal and accrued interest shall be due and payable on the last Payment Date.  By signing a Notice of Borrowing which acknowledges that such Loan is the final funding pursuant to this Note, the Debtor agrees that (a) the revised Schedule A for such Note attached to such Notice of Borrowing reflecting the principal repayment schedule based on the actual amount of the Loan which is outstanding on the Commencement Date, and (b) the Fixed Rate set forth in such Notice of Borrowing, will each be binding on the Debtor absent manifest error.  In the event Lender fails to provide Debtor with such revised Schedule, Debtor shall repay the principal amount of the Loans on each Payment Date as directed in writing by Lender in advance of such date.

**PREPAYMENT.**  Debtor may prepay the Note in whole but not in part on or after the first anniversary of the issuance of this Note on any Payment Date upon ninety (90) days' prior written notice to Lender by prepaying the Note in full.  Debtor may exercise such prepayment to the extent the following conditions are met: (a) on the date designated for such prepayment of the Note, Debtor shall have paid Lender an amount equal to five percent (5%) of the principal balance outstanding on the Note as shown on the records of Lender for such date (not taking into account any payments of principal paid on such date), in good, immediately available funds; and (b) on the date designated for such prepayment of the Note, Debtor shall have paid all principal and interest payable with respect to the Note and any other amount due and payable or accrued, under the Note, the Aircraft Security Agreement or any other Loan Document, including, without limitation, any prepayment or breakage charges actually incurred by Lender. Upon receipt of all such amounts and satisfaction of any other amounts secured by the Aircraft Security Agreement, Lender shall release its lien with respect to the Collateral.  Except as set forth in this paragraph, Debtor may not prepay the Note.

**DEFAULT RATE.**  In addition to all other rights contained in this Note, if a Default occurs and as long as a Default continues, all outstanding Obligations, other than Swap Obligations, shall bear interest at three percent (3%), plus the greater of  (i) the Interest Rate, or  (ii) the Prime Rate ("Default Rate").  The Default Rate shall also apply from acceleration until the Obligations (other than Swap Obligations) or any judgment thereon is paid in full. The "Prime Rate" as used herein shall mean a fluctuating rate of interest announced from time to time by Wachovia Bank, National Association (the "Bank") as its prime rate, which may not necessarily be its best lending rate, and shall change each time and become effective as of the date the Bank announces a change in such rate.  The Bank and Lender each lend at rates both above and below the Prime Rate, and Debtor acknowledges that the Prime Rate is not represented or intended to be the lowest or most favorable rate of interest offered by Lender or the Bank.

**INTEREST AND FEE(S) COMPUTATION (30/360).**  Interest and fees, if any, shall be computed on the basis of a 360-day year and 30 day months in the applicable period ("30/360 Computation").  The 30/360 Computation determines the annual effective yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period.

**APPLICATION OF PAYMENTS.**  Monies received by Lender from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal.  If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Lender.

If any payment received by Lender under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

**LATE CHARGE.** If any payments are not timely made, Debtor shall also pay to Lender a late charge equal to four percent (4%) of each payment past due for fifteen (15) or more days.

Acceptance by Lender of any late payment without an accompanying late charge shall not be deemed a waiver of Lender's right to collect such late charge or to collect a late charge for any subsequent late payment received.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Debtor shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Lender in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Debtor.

**REMEDIES UPON DEFAULT.** If a Default (as defined in the Aircraft Security Agreement) occurs under this Note or any Loan Documents, Lender may at any time thereafter, take the following actions:  **Lender Lien.** Foreclose its security interest or lien against Debtor's accounts with Lender or any Lender Affiliate without notice. **Acceleration Upon Default.**  Accelerate the maturity of this Note and, at Lender's option, any or all other Obligations, but not Swap Obligations, which Swap Obligations shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable; provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Debtor or any Guarantor or endorser of this Note, all Obligations (other than Swap Obligations) shall automatically and immediately be due and payable.  **Cumulative.**  Exercise any rights and remedies as provided under the Note, the Aircraft Security Agreement, any Guaranty and other Loan Documents, or as provided by law or equity.

**WAIVERS AND AMENDMENTS.**  No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Lender.  No waiver by Lender of any Default shall operate as a waiver of any other Default or the same Default on a future occasion.  Neither the failure nor any delay on the part of Lender in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Debtor and each other person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Lender may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to the Collateral securing this Note, or with respect to any Debtor or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Debtor and other such person, and without affecting the liability of each Debtor and other such person; provided, Lender may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Debtor, or if there is more than one Debtor, without the consent of at least one Debtor; and further provided, if there is more than one Debtor, Lender may not enter into a modification of this Note which increases the burdens of a Debtor without the consent of that Debtor.

**GOVERNING LAW.** This Note shall be governed by and construed in accordance with the internal laws of the State of North Carolina, including all matters of construction, validity and performance.

**DOCUMENT DELIVERY.**  Debtor agrees that the parties intend that there shall be only one manually executed original of this Note, and, to the extent that this document constitutes chattel paper under the UCC, no security interest herein may be created by the transfer or possession of any counterpart other than the copy marked "WACHOVIA ORIGINAL".

[The remainder of this page is intentionally left blank.]

IN WITNESS WHEREOF, Debtor on the day and year first above written, has caused this Note to be executed under seal.

[DEBTOR]

[EXHIBIT—DO NOT SIGN]

By:_____
Name:
Title:

State of _____

County of _____

I, _____, a Notary Public in and for said state and county, do hereby certify that _____ personally appeared before me this day and acknowledged his due execution of the foregoing Aircraft Security Agreement.

Witness my hand and official seal this _____ day of _____, 20_____.

_____
Notary Public

My commission expires:

_____

[NOTARY SEAL]

## SCHEDULE A
### TO PROMISSORY NOTE DATED _____, 20____

| PAYMENT NUMBER | PAYMENT AMOUNT | PRINCIPAL | INTEREST | BALANCE |
|---|---|---|---|---|
| | | | | |

### TO BE PROVIDED AT TIME OF FUNDING

**This Schedule "A" assumes that each payment has been made on a Payment Date**

 **WACHOVIA**

**EXHIBIT A**
**FORM OF PROMISSORY NOTE**
**(FIXED RATE, PRINCIPAL PLUS INTEREST)**

$_____.00

_____, 20____

[DEBTOR NAME]_____
[DEBTOR ADDRESS]_____
(Individually and collectively, "Debtor")

Wachovia Financial Services, Inc.
(a subsidiary of Wachovia Bank, National Association)
One Wachovia Center
Mail Code NC0738
Charlotte, North Carolina 28288-0738
(Hereinafter referred to as "Lender")

Debtor promises to pay to the order of Lender, in lawful money of the United States of America, at its office indicated above or wherever else Lender may specify, the sum of _____ and No/100 Dollars ($_____.00) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**USE OF PROCEEDS.** Debtor shall use the proceeds of the loan evidenced by this Note to finance the refinance or purchase of the Aircraft described in that certain Aircraft Security Agreement dated _____, 20____, (the "Aircraft Security Agreement").

**SECURITY.** Debtor has granted Lender a security interest in the Collateral described in the Loan Documents, including, but not limited to, personal property collateral described in the Aircraft Security Agreement (the "Collateral"). The Collateral is held by Lender as security for the Obligations. The provisions of this Note are subject to the Aircraft Security Agreement, and all capitalized terms used herein and not otherwise defined herein shall have the meanings assigned in the Aircraft Security Agreement. Reference is hereby made to the Aircraft Security Agreement for a supplemental statement of the rights of the holder of, and the nature and extent of the security for, this Note.

**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of the Loan evidenced by this Note (the "Interest Rate") from and including the Commencement Date of such Loan to the last Payment Date (as defined below), at the Fixed Rate for such Loan.  [ALTERNATIVE 1]["Fixed Rate" means the fixed rate of interest determined by the Lender on the Commencement Date for such Loan by increasing or decreasing the fixed rate (from an assumed interest rate of _____%) for each corresponding basis point change in the Funding Index Rate (defined below) from (a) ____, 20____ (the date quoted in Lender's Proposal Letter to Debtor) and (b) the date which is three (3) Business Days prior to the Commencement Date. "Funding Index Rate" means, as of any date of determination, [the [ ]-year US Interest Rate Swap (USSWAP) [ ] Index on Bloomberg][the [ ]-year US Interest Rate Swap as published in the Federal Reserve System's statistical release H.15, entitled "Selected Interest Rates" using the week ending rate for the corresponding like term from the latest available release] [the [.oo]% Treasury Note's yield to maturity of [0.00]% and maturing [Month/Year], as stated herein and [as published in The Wall Street Journal][on Bloomberg].  [ALTERNATIVE 2] ["Fixed Rate" means the fixed rate of interest determined by the Lender on the Commencement Date for such Loan by adding the Adjustment Amount to an assumed interest rate of _____%. The "Adjustment Amount" means the greater of (a) the change in the ___% Treasury Rate's yield to maturity of ___% and maturing ____, 20____, as published in The Wall Street Journal (i) on ____, 20____ (the date quoted in Lender's Proposal Letter to Debtor) and (ii) on the date which is three (3) Business Days prior to the Commencement Date, or (b) the change in the [one] year LIBOR rate as published in The Wall Street Journal (i) on ____, 20____ (the date quoted in Lender's Proposal Letter to Debtor), and (ii) the date which is three (3) Business Days prior to the Commencement Date.]

The Debtor shall agree in the Notice of Borrowing that the date on which the Loan is made shall be the Commencement Date. The Fixed Rate may be further adjusted by Lender in the event that the Loan is made on a date later than that set forth in such Notice of Borrowing.

**REPAYMENT TERMS. [INTEREST ONLY PERIOD]** [From the date of this Note until and including [___months from] the Commencement Date, this Note shall be payable in consecutive [monthly] [quarterly] payments of accrued interest only, commencing on the [_____] day of the [third] month immediately succeeding the date of the first advance of such Loan and on the same day of each [month] [third month] thereafter.] Commencing [one month][three months][___ months] from the Commencement Date, principal on the Loan and accrued interest shall be payable on each Payment Date (as defined below) in [_____ (_____)] consecutive [monthly][quarterly] payments of principal, plus accrued interest, as set forth on the attached Schedule A. "Payment Date" shall mean the same calendar day of [each month][each third month] as the calendar day on which the Commencement Date occurs, provided that any Payment Date that would otherwise fall on a day which is not a Business Day shall be extended to the next succeeding Business Day, unless such Business Day falls in another calendar month, in which case such Payment Date shall be on the next preceding Business Day. In any event, all principal and accrued interest shall be due and payable on the last Payment Date. By signing a Notice of Borrowing which acknowledges that such Loan is the final funding pursuant to this Note, the Debtor agrees that (a) the revised Schedule A for such Note attached to such Notice of Borrowing reflecting the principal repayment schedule based on the actual amount of the Loan which is outstanding on the Commencement Date, and (b) the Fixed Rate set forth in such Notice of Borrowing, will each be binding on the Debtor absent manifest error. In the event Lender fails to provide Debtor with such revised Schedule, Debtor shall repay the principal amount of the Loans on each Payment Date as directed in writing by Lender in advance of such date.

**PREPAYMENT.** Debtor may prepay the Note in whole but not in part on or after the first anniversary of the issuance of this Note on any Payment Date upon ninety (90) days' prior written notice to Lender by prepaying the Note in full. Debtor may exercise such prepayment to the extent the following conditions are met: (a) on the date designated for such prepayment of the Note, Debtor shall have paid Lender an amount equal to five percent (5%) of the principal balance outstanding on the Note as shown on the records of Lender for such date (not taking into account any payments of principal paid on such date), in good, immediately available funds; and (b) on the date designated for such prepayment of the Note, Debtor shall have paid all principal and interest payable with respect to the Note and any other amount due and payable or accrued, under the Note, the Aircraft Security Agreement or any other Loan Document, including, without limitation, any prepayment or breakage charges actually incurred by Lender. Upon receipt of all such amounts and satisfaction of any other amounts secured by the Aircraft Security Agreement, Lender shall release its lien with respect to the Collateral. Except as set forth in this paragraph, Debtor may not prepay the Note.

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a Default occurs and as long as a Default continues, all outstanding Obligations, other than Swap Obligations, shall bear interest at three percent (3%), plus the greater of (i) the Interest Rate, or (ii) the Prime Rate ("Default Rate"). The Default Rate shall also apply from acceleration until the Obligations (other than Swap Obligations) or any judgment thereon is paid in full. The "Prime Rate" as used herein shall mean a fluctuating rate of interest announced from time to time by Wachovia Bank, National Association (the "Bank") as its prime rate, which may not necessarily be its best lending rate, and shall change each time and become effective as of the date the Bank announces a change in such rate. The Bank and Lender each lend at rates both above and below the Prime Rate, and Debtor acknowledges that the Prime Rate is not represented or intended to be the lowest or most favorable rate of interest offered by Lender or the Bank.

**INTEREST AND FEE(S) COMPUTATION (30/360).** Interest and fees, if any, shall be computed on the basis of a 360-day year and 30 day months in the applicable period ("30/360 Computation"). The 30/360 Computation determines the annual effective yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period.

**APPLICATION OF PAYMENTS.** Monies received by Lender from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal. If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Lender.

If any payment received by Lender under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

**LATE CHARGE.** If any payments are not timely made, Debtor shall also pay to Lender a late charge equal to four percent (4%) of each payment past due for fifteen (15) or more days.

Acceptance by Lender of any late payment without an accompanying late charge shall not be deemed a waiver of Lender's right to collect such late charge or to collect a late charge for any subsequent late payment received.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Debtor shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Lender in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Debtor.

**REMEDIES UPON DEFAULT.** If a Default (as defined in the Aircraft Security Agreement) occurs under this Note or any Loan Documents, Lender may at any time thereafter, take the following actions: **Lender Lien.** Foreclose its security interest or lien against Debtor's accounts with Lender or any Lender Affiliate without notice. **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Lender's option, any or all other Obligations, but not Swap Obligations, which Swap Obligations shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable; provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Debtor or any Guarantor or endorser of this Note, all Obligations (other than Swap Obligations) shall automatically and immediately be due and payable. **Cumulative.** Exercise any rights and remedies as provided under the Note, the Aircraft Security Agreement, any Guaranty and other Loan Documents, or as provided by law or equity.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Lender. No waiver by Lender of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Lender in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Debtor and each other person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Lender may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to the Collateral securing this Note, or with respect to any Debtor or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Debtor and other such person, and without affecting the liability of each Debtor and other such person; provided, Lender may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Debtor, or if there is more than one Debtor, without the consent of at least one Debtor; and further provided, if there is more than one Debtor, Lender may not enter into a modification of this Note which increases the burdens of a Debtor without the consent of that Debtor.

**GOVERNING LAW.** This Note shall be governed by and construed in accordance with the internal laws of the State of North Carolina, including all matters of construction, validity and performance.

**DOCUMENT DELIVERY.** Debtor agrees that the parties intend that there shall be only one manually executed original of this Note, and, to the extent that this document constitutes chattel paper under the UCC, no security interest herein may be created by the transfer or possession of any counterpart other than the copy marked "WACHOVIA ORIGINAL".

**IN WITNESS WHEREOF**, Debtor on the day and year first above written, has caused this Note to be executed under seal.

[DEBTOR]

[EXHIBIT—DO NOT SIGN]

By:_____
Name:
Title:

State of _____

County of _____

I, _____, a Notary Public in and for said state and county, do hereby certify that _____ personally appeared before me this day and acknowledged his due execution of the foregoing Aircraft Security Agreement .

Witness my hand and official seal this _____ day of _____, 20_____ .

_____
Notary Public

My commission expires:

_____

[NOTARY SEAL]

**SCHEDULE A**
**TO PROMISSORY NOTE DATED _____, 20____**

| PAYMENT NUMBER | PAYMENT AMOUNT | PRINCIPAL | INTEREST | BALANCE |
|---|---|---|---|---|
| | | | | |

**TO BE PROVIDED AT TIME OF FUNDING**

**This Schedule "A" assumes that each payment has been made on a Payment Date**

 **WACHOVIA**

### EXHIBIT B - NOTICE OF BORROWING
### (TO PROMISSORY NOTE DATED AS OF _____, 20___)

_____ ("Debtor") hereby issues to WACHOVIA FINANCIAL SERVICES, INC. (a subsidiary of Wachovia Bank, National Association)("Lender") this Notice of Borrowing dated _____ (this "Notice of Borrowing"), in accordance with the terms of the Aircraft Security Agreement (the "Agreement") dated as of _____, 20___, by and between Debtor and Lender, and the Promissory Note (the "Note") dated as of _____, 20___, executed by Debtor and delivered to Lender. All capitalized terms used without definition herein shall have the meanings assigned in the Agreement.

Debtor (a) hereby certifies, represents, warrants and agrees that: the Aircraft described on Schedule I of the Agreement (the "Aircraft") has been delivered, and is hangared at the address set forth in Schedule I and shall not be hangared elsewhere without the prior written consent of Lender; and (b) authorizes and directs Lender to pay to each of the indicated parties the amount(s) set forth below:

| Recipient of Funds: | Amount: |
|---|---|
| _____ | $ _____ |
| Total Disbursement(s): | $ _____ |

This Notice of Borrowing shall be construed as supplemental to the Agreement and shall be subject thereto. The Agreement is hereby ratified, approved and confirmed.

Debtor confirms that the borrowing requested herein shall be the sole funding under the Note and that the date on which such funding occurs shall be the Commencement Date. Debtor agrees that the revised Schedule A attached hereto as Annex A shall amend and replace the Schedule A currently attached to the Note, and that such Schedule A shall be binding on the Debtor absent manifest error. Debtor further agrees that so long as, no later than _____, 20___: (i) Lender receives back from Debtor an executed copy of this Notice of Borrowing, and (ii) the funding occurs, then the Fixed Rate shall be_____(%) percent. If each of the conditions set forth in the preceding sentence is not satisfied by the indicated date, then Lender may adjust the Fixed Rate and if there is such an adjustment then a new Notice of Borrowing for the funding will need to be executed by Debtor.

{The remainder of this page is intentionally left blank.}

IN WITNESS WHEREOF, Debtor on the day and year first above written, has caused this Notice of Borrowing to be executed under seal.

[DEBTOR]

[EXHIBIT—DO NOT SIGN]

By:_____
Name:
Title:

**ANNEX A**

TO NOTICE OF BORROWING  DATED _____, 20_____

**SCHEDULE A**
**TO PROMISSORY NOTE**

VZ027

## EXHIBIT C

### FORM OF IRREVOCABLE DE-REGISTRATION AND EXPORT REQUEST AUTHORIZATION

**THIS IDERA IS LINKED TO AND PART OF THAT CERTAIN AIRCRAFT SECURITY AGREEMENT DATED _____, 200_, BY AND BETWEEN _____ AND WACHOVIA FINANCIAL SERVICES, INC., WHICH IS BEING FILED WITH THE FEDERAL AVIATION ADMINISTRATION CONTEMPORANEOUSLY HEREWITH**

### IRREVOCABLE DE-REGISTRATION AND EXPORT REQUEST AUTHORIZATION

_____, 20____

To:   Federal Aviation Administration

Re:   Irrevocable De-Registration and Export Request Authorization

The undersigned is the registered owner of the [insert the airframe/helicopter manufacturer name and model number]_____ bearing manufacturers serial number [insert manufacturer's serial number] _____ and registration [insert registration number/mark] _____ [number][mark] (together with all installed, incorporated or attached accessories, parts and equipment, the "aircraft").

This instrument is an irrevocable de-registration and export request authorization issued by the undersigned in favor of Wachovia Financial Services, Inc. ("the authorized party") under the authority of Article XIII of the Protocol to the Convention on International Interests in Mobile Equipment on Matters specific to Aircraft Equipment. In accordance with that Article, the undersigned hereby requests:

    (i)    recognition that the authorized party or the person it certifies as its designee is the sole person entitled to:

        (a)    procure the de-registration of the aircraft from the Aircraft Register maintained by the Federal Aviation Administration for the purposes of Chapter III of the *Convention on International Civil Aviation*, signed at Chicago, on 7 December 1944, and

        (b)    procure the export and physical transfer of the aircraft from the United States of America; and

    (ii)    confirmation that the authorized party or the person it certifies as its designee may take the action specified in clause (i) above on written demand without the consent of the undersigned and that, upon such demand, the authorities in the United States of America shall co-operate with the authorized party with a view to the speedy completion of such action.

The rights in favor of the authorized party established by this instrument may not be revoked by the undersigned without the written consent of the authorized party.

Please acknowledge your agreement to this request and its terms by appropriate notation in the space provided below and lodging this instrument in the Aircraft Register maintained by the Federal Aviation Administration.

[insert name of Debtor]

By:_____
    Name:_____
    Title:_____

**FILING COPY**

VV MAY 3 0 2006

THIS IDERA IS LINKED TO AND PART OF THAT CERTAIN AIRCRAFT SECURITY AGREEMENT
DATED APRIL 26, 2006, BY AND BETWEEN VISTA AVIATION, L.L.C. AND WACHOVIA
FINANCIAL SERVICES, INC., WHICH IS BEING FILED WITH THE FEDERAL AVIATION
ADMINISTRATION CONTEMPORANEOUSLY HEREWITH

### IRREVOCABLE DE-REGISTRATION
### AND EXPORT REQUEST AUTHORIZATION

April 26, 2006

To:     Federal Aviation Administration

Re:     Irrevocable De-Registration and Export Request Authorization

The undersigned is the registered owner of the       . : Hawker Siddey HS.125-700A bearing manufacturer's serial number NA0234 and registration N323JK (together with all installed, incorporated or attached accessories, parts and equipment, the "aircraft").

This instrument is an irrevocable de-registration and export request authorisation issued by the undersigned in favour of Wachovia Financial Services, Inc. ("the authorized party") under the authority of Article XIII of the Protocol to the Convention on International Interests in Mobile Equipment on Matters specific to Aircraft Equipment. In accordance with that Article, the undersigned hereby requests:

(i)     recognition that the authorised party or the person it certifies as its designee is the sole person entitled to:

(a)     procure the de-registration of the aircraft from the Aircraft Register maintained by the Federal Aviation Administration for the purposes of Chapter III of the *Convention on International Civil Aviation,* signed at Chicago, on 7 December 1944, and

(b)     procure the export and physical transfer of the aircraft from the United States of America; and

(ii)    confirmation that the authorised party or the person it certifies as its designee may take the action specified in clause (i) above on written demand without the consent of the undersigned and that, upon such demand, the authorities in the United States of America shall co-operate with the authorised party with a view to the speedy completion of such action.

The rights in favour of the authorised party established by this instrument may not be revoked by the undersigned without the written consent of the authorised party.

Please acknowledge your agreement to this request and its terms by appropriate notation in the space provided below and lodging this instrument in the Aircraft Register maintained by the Federal Aviation Administration.

VISTA AVIATION, L.L.C.

By: _____

Name: Eduard de Guardiola

Title: Member

 **WACHOVIA**

UNCONDITIONAL GUARANTY

April 26, 2006

Vista Aviation, L.L.C.
1360 Peachtree Street, Suite 1000
Atlanta, Georgia   30309
(Individually and collectively "Debtor")

Eduard de Guardiola
515 West Paces Ferry Road
Atlanta, Georgia   30327
(Individually and collectively "Guarantor")

Wachovia Financial Services, Inc.
(a subsidiary of Wachovia Bank, National Association)
One Wachovia Center
Mail Code NC0738
Charlotte, North Carolina 28288-0738
(Hereinafter referred to as "Wachovia")

To induce Wachovia to make, extend or renew loans, leases, advances, credit, or other financial accommodations to or for the benefit of Debtor, which are and will be to the direct interest and advantage of the Guarantor, and in consideration of loans, leases, advances, credit, or other financial accommodations made, extended or renewed to or for the benefit of Debtor, which are and will be to the direct interest and advantage of the Guarantor, Guarantor hereby absolutely, irrevocably and unconditionally guarantees to Wachovia (and it's parent corporation and any of their respective subsidiaries or affiliates (each, a "Wachovia Affiliate") with which Debtor has or will have outstanding any obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time)("Swap Obligations") and any of Wachovia's or Wachovia Affiliate's successors or assigns the timely payment and performance of all liabilities and obligations of Debtor to Wachovia,   including, but not limited to, all obligations under any notes, leases, loan agreements, security agreements, letters of credit, instruments, accounts receivable, contracts, drafts, chattel paper, indemnities, acceptances, repurchase agreements, overdrafts, and the Loan Documents, and all Swap Obligations of Debtor to Wachovia or any Wachovia Affiliate, however and whenever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, due or to become due, now existing or hereafter contracted or acquired, and all modifications, extensions and renewals thereof, (collectively, the "Guaranteed Obligations"). All capitalized terms used without definition herein shall have the meanings assigned in that certain Aircraft Security Agreement dated April 26, 2006, by and between Debtor and Wachovia

Guarantor further covenants and agrees:

**GUARANTOR'S LIABILITY.** This Guaranty is a continuing and unconditional guaranty of payment and performance and not of collection. The parties to this Guaranty are jointly and severally obligated hereunder. This Guaranty does not impose any obligation on Wachovia to extend or continue to extend credit or otherwise deal with Debtor at any subsequent time. This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of the Guaranteed Obligations is rescinded, avoided or for any other reason must be returned by Wachovia or any Wachovia Affiliate, and the returned payment shall remain payable as part of the Guaranteed Obligations, all as though such payment had not been made. Except to the extent the provisions of this Guaranty give Wachovia or any Wachovia Affiliate additional rights, this Guaranty shall not be deemed to supersede or replace any other guaranties given to Wachovia or any Wachovia Affiliate by Guarantor; and the obligations guaranteed hereby shall be in addition to any other obligations guaranteed by Guarantor pursuant to any

other agreement of guaranty given to Wachovia or any Wachovia Affiliate and other guaranties of the Guaranteed Obligations.

**TERMINATION OF GUARANTY.** Guarantor may terminate this Guaranty only by written notice, delivered personally to or received by certified or registered United States Mail by an authorized officer of Wachovia at the address for notices provided herein. Such termination shall be effective only with respect to Guaranteed Obligations arising more than fifteen (15) days after the date such written notice is received by said Wachovia officer. Such termination shall not be effective with respect to Guaranteed Obligations (including any subsequent extensions, modifications or compromises of the Guaranteed Obligations) then existing, or Guaranteed Obligations arising subsequent to receipt by Wachovia of said notice if such Guaranteed Obligations are a result of Wachovia's or any Wachovia Affiliate's obligation to make advances pursuant to a commitment, or are based on Debtor's obligations to make payments pursuant to any swap agreement (as defined in 11 U.S.C. § 101, as in effect from time to time), entered into prior to expiration of the fifteen (15) day notice period, or are a result of advances which are necessary for Wachovia or any Wachovia Affiliate to protect its collateral or otherwise preserve its interests. Termination of this Guaranty by any single Guarantor will not affect the existing and continuing obligations of any other Guarantor hereunder.

**CONSENT TO MODIFICATIONS.** Guarantor consents and agrees that Wachovia (and, with respect to Swap Obligations, any Wachovia Affiliate) may from time to time, in its sole discretion, without affecting, impairing, lessening or releasing the obligations of Guarantor hereunder: (a) extend or modify the time, manner, place or terms of payment or performance and/or otherwise change or modify the credit terms of the Guaranteed Obligations; (b) increase, renew, or enter into a novation of the Guaranteed Obligations; (c) waive or consent to the departure from terms of the Guaranteed Obligations; (d) permit any change in the business or other dealings and relations of Debtor or any other guarantor with Wachovia or any Wachovia Affiliate; (e) proceed against, exchange, release, realize upon, or otherwise deal with in any manner any collateral that is or may be held by Wachovia or any Wachovia Affiliate in connection with the Guaranteed Obligations or any liabilities or obligations of Guarantor; and (f) proceed against, settle, release, or compromise with Debtor, any insurance carrier, or any other person or entity liable as to any part of the Guaranteed Obligations, and/or subordinate the payment of any part of the Guaranteed Obligations to the payment of any other obligations, which may at any time be due or owing to Wachovia or any Wachovia Affiliate; all in such manner and upon such terms as Wachovia or any Wachovia Affiliate, as applicable, may deem appropriate, and without notice to or further consent from Guarantor. No invalidity, irregularity, discharge or unenforceability of, or action or omission by Wachovia or any Wachovia Affiliate relating to any part of the Guaranteed Obligations or any security therefor shall affect or impair this Guaranty.

**WAIVERS AND ACKNOWLEDGMENTS.** Guarantor waives and releases the following rights, demands, and defenses Guarantor may have with respect to Wachovia (and, with respect to Swap Obligations, any Wachovia Affiliate) and collection of the Guaranteed Obligations: (a) promptness and diligence in collection of any of the Guaranteed Obligations from Debtor or any other person liable thereon, and in foreclosure of any security interest and sale of any property serving as collateral for the Guaranteed Obligations; (b) any law or statute that requires that Wachovia (and, with respect to Swap Obligations, any Wachovia Affiliate) make demand upon, assert claims against, or collect from Debtor or other persons or entities, foreclose any security interest, sell collateral, exhaust any remedies, or take any other action against Debtor or other persons or entities prior to making demand upon, collecting from or taking action against Guarantor with respect to the Guaranteed Obligations, including any such rights Guarantor might otherwise have had under Va. Code §§ 49-25 and 49-26, et seq., N.C.G.S. §§ 26-7, et seq., Tenn. Code Ann. § 47-12-101, O.C.G.A. § 10-7-24 and any successor statute and any other applicable law; (c) any law or statute that requires that Debtor or any other person be joined in, notified of or made part of any action against Guarantor; (d) that Wachovia or any Wachovia Affiliate preserve, insure or perfect any security interest in collateral or sell or dispose of collateral in a particular manner or at a particular time, provided that Wachovia's obligation to dispose of Collateral in a commercially reasonable manner is not waived hereby; (e) notice of extensions, modifications, renewals, or novations of the Guaranteed Obligations, of any new transactions or other relationships between Wachovia, any Wachovia Affiliate, Debtor and/or any other Guarantor, and of changes in the financial condition of, ownership of, or business structure of Debtor or any other Guarantor; (f) presentment, protest, notice of dishonor, notice of default, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale, and all other notices of any kind whatsoever to which Guarantor may be

entitled; (g) the right to assert against Wachovia or any Wachovia Affiliate any defense (legal or equitable), set-off, counterclaim, or claim that Guarantor may have at any time against Debtor or any other party liable to Wachovia or any Wachovia Affiliate; (h) all defenses relating to invalidity, insufficiency, unenforceability, enforcement, release or impairment of Wachovia's or any Wachovia Affiliate's lien on any collateral, of the Loan Documents or the Swap Obligations, or of any other guaranties held by Wachovia or any Wachovia Affiliate; (i) any right to which Guarantor is or may become entitled to be subrogated to Wachovia's or any Wachovia Affiliate's rights against Debtor or to seek contribution, reimbursement, indemnification, payment or the like, or participation in any claim, right or remedy of Wachovia or any Wachovia Affiliate against Debtor or any security which Wachovia or any Wachovia Affiliate now has or hereafter acquires, until such time as the Guaranteed Obligations have been fully satisfied beyond the expiration of any applicable preference period; (j) any claim or defense that acceleration of maturity of the Guaranteed Obligations is stayed against Guarantor because of the stay of assertion or of acceleration of claims against any other person or entity for any reason including the bankruptcy or insolvency of that person or entity; and (k) the right to marshalling of Debtor's assets or the benefit of any exemption claimed by Guarantor. Guarantor acknowledges and represents that Guarantor has relied upon Guarantor's own due diligence in making an independent appraisal of Debtor, Debtor's business affairs and financial condition, and any collateral; Guarantor will continue to be responsible for making an independent appraisal of such matters; and Guarantor has not relied upon Wachovia or any Wachovia Affiliate for information regarding Debtor or any collateral.

**FINANCIAL CONDITION.**  Guarantor warrants, represents and covenants to Wachovia and any Wachovia Affiliate that on and after the date hereof: (a) the fair saleable value of Guarantor's assets exceeds its liabilities, Guarantor is meeting its current liabilities as they mature, and Guarantor is and shall remain solvent; (b) all financial statements of Guarantor furnished to Wachovia are correct and accurately reflect the financial condition of Guarantor as of the respective dates thereof; (c) since the date of such financial statements, there has not occurred a material adverse change in the financial condition of Guarantor; (d) there are not now pending any material court or administrative proceedings or undischarged judgments against Guarantor, no federal or state tax liens have been filed or threatened against Guarantor, and Guarantor is not in default or claimed default under any material agreement; and (e) at such reasonable times as Wachovia requests, Guarantor will furnish Wachovia or any Wachovia Affiliate with such other financial information as Wachovia or any Wachovia Affiliate may reasonably request.

**INTEREST AND APPLICATION OF PAYMENTS.**  Regardless of any other provision of this Guaranty or the other Loan Documents, if for any reason the effective interest on any of the Guaranteed Obligations should exceed the maximum lawful interest, the effective interest shall be deemed reduced to and shall be such maximum lawful interest, and any sums of interest which have been collected in excess of such maximum lawful interest shall be applied as a credit against the unpaid principal balance of the Guaranteed Obligations. Monies received from any source by Wachovia or any Wachovia Affiliate for application toward payment of the Guaranteed Obligations may be applied to such Guaranteed Obligations in any manner or order deemed appropriate by Wachovia and any Wachovia Affiliate.

**DEFAULT.**  If any of the following events occur, a default ("_Default_") under this Guaranty shall exist: (a) failure of timely payment or performance of the Guaranteed Obligations or a default under any Loan Document; (b) a breach of any agreement or representation contained or referred to in the Guaranty, or any of the Loan Documents, or contained in any other contract or agreement of Guarantor with Wachovia or any Wachovia Affiliate, whether now existing or hereafter arising; (c) the death of, appointment of a guardian for, or the commencement of any insolvency or bankruptcy proceeding by or against Guarantor, and/or (d) Wachovia determines in good faith, in its sole discretion, that the prospects for payment or performance of the Guaranteed Obligations are impaired or a material adverse change has occurred in the business or prospects of Debtor or Guarantor, financial or otherwise.

If a Default occurs, the Guaranteed Obligations shall be due immediately and payable without notice, other than Swap Obligations with Wachovia or any Wachovia Affiliate, which shall be due in accordance with and governed by the provisions of said swap agreements, and, Wachovia and any Wachovia Affiliate may exercise any rights and remedies as provided in this Guaranty, or any other Loan Document, or as provided at law or equity.  Guarantor shall pay interest on the Guaranteed Obligations from such Default at the highest rate of interest charged on any of the Guaranteed Obligations.

**ATTORNEYS' FEES AND OTHER COSTS OF COLLECTION.** Guarantor shall pay all of Wachovia's and any Wachovia Affiliate's reasonable expenses incurred to enforce or collect any of the Guaranteed Obligations, including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any suit, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**SUBORDINATION OF OTHER DEBTS.** Guarantor agrees: (a) to subordinate the obligations now or hereafter owed by Debtor to Guarantor ("Subordinated Debt") to any and all obligations of Debtor to Wachovia or any Wachovia Affiliate now or hereafter existing while this Guaranty is in effect, provided however that Guarantor may receive regularly scheduled principal and interest payments on the Subordinated Debt so long as (i) all sums due and payable by Debtor to Wachovia and any Wachovia Affiliate have been paid in full on or prior to such date, and (ii) no event or condition which constitutes or which with notice or the lapse or time would constitute an event of default or termination event with respect to the Guaranteed Obligations shall be continuing on or as of the payment date; (b) Guarantor will either place a legend indicating such subordination on every note, ledger page or other document evidencing any part of the Subordinated Debt or deliver such documents to Wachovia; and (c) except as permitted by this paragraph, Guarantor will not request or accept payment of or any security for any part of the Subordinated Debt, and any proceeds of the Subordinated Debt paid to Guarantor, through error or otherwise, shall immediately be forwarded to Wachovia by Guarantor, properly endorsed to the order of Wachovia, to apply to the Guaranteed Obligations.

**MISCELLANEOUS. Assignment.** This Guaranty and the other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Wachovia's interests in and rights under this Guaranty, or any other Loan Document, are freely assignable, in whole or in part, by Wachovia Any assignment shall not release Guarantor from the Guaranteed Obligations. **Powers.** Guarantor is an adult individual and is sui juris. **Applicable Law; Conflict Between Documents.** This Guaranty shall be governed by and construed under the laws of the State of North Carolina, without regard to that state's conflict of laws principles. **Guarantor's Accounts.** Except as prohibited by law, Guarantor grants Wachovia and any Wachovia Affiliate a security interest in all of Guarantor's accounts with Wachovia and any Wachovia Affiliate. **Jurisdiction.** Guarantor irrevocably agrees to non-exclusive personal jurisdiction in the State of North Carolina. **Severability.** If any provision of this Guaranty or of any other Loan Document shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty, or other Loan Documents. **Notices.** Any notices to Guarantor shall be sufficiently given if in writing and mailed or delivered to Guarantor's address shown above or such other address as provided hereunder, and to Wachovia, if in writing and mailed or delivered to Wachovia's address shown above, or such other address as Wachovia may specify in writing from time to time. Notices to Wachovia must include the mail code. In the event that Guarantor changes Guarantor's address at any time prior to the date the Guaranteed Obligations are paid in full, Guarantor agrees to promptly give written notice of said change of address to Wachovia by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to debtor, lessee, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Binding Contract.** Guarantor by execution of and Wachovia by acceptance of this Guaranty agree that each party is bound to all terms and provisions of this Guaranty. **Amendments, Waivers and Remedies.** No waivers, amendments or modifications of this Guaranty and the other Loan Documents shall be valid unless in writing and signed by an officer of Wachovia. No waiver by Wachovia or any Wachovia Affiliate of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Wachovia or any Wachovia Affiliate in exercising any right, power, or privilege granted pursuant to this Guaranty and the other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise or the exercise of any other right, power or privilege. All remedies available to Wachovia or any Wachovia Affiliate with respect to this Guaranty and the other Loan Documents and remedies available at law or in equity shall be cumulative and may be pursued concurrently or successively. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES. EACH OF THE PARTIES HERETO, INCLUDING WACHOVIA BY**

ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS GUARANTY, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES.   EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE.

**FINAL AGREEMENT.** This Guaranty and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**FINANCIAL AND OTHER INFORMATION.** Guarantor will furnish to Wachovia the following information within the following time periods: (a) within one hundred twenty (120) days after the end of each fiscal year, annual financial statements of Guarantor, (b) within thirty (30) days of filing, copies of the federal tax returns of Guarantor, and (c) such additional information as Wachovia may reasonably request from time to time, including without limitation, additional financial statements and information pertaining to the financial condition of Guarantor. Such information shall be true, complete and accurate.

**NEGATIVE COVENANTS.** Guarantor agrees that from the date hereof and until final payment in full of the Guaranteed Obligations, unless Wachovia shall otherwise consent in writing, Guarantor will not: **Default on Other Contracts or Obligations.** Default on any material contract with or obligation when due to a third party or default in the performance of any obligation to a third party incurred for money borrowed. **Government Intervention.** Permit the assertion or making of any seizure, vesting or intervention by or under authority of any governmental entity, as a result of which the management of Guarantor or any guarantor is displaced of this authority in the conduct of its respective business or such business is curtailed or materially impaired. **Judgment Entered.** Permit the entry of any monetary judgment or the assessment against, the filing of any tax lien against, or the issuance of any writ of garnishment or attachment against any property of or debts due.

**ARBITRATION.** Upon demand of any party hereto, whether made before or after institution of any judicial proceeding, any claim or controversy arising out of or relating to the Loan Documents between parties hereto (a "Dispute") shall be resolved by binding arbitration conducted under and governed by the Commercial Financial Disputes Arbitration Rules (the "Arbitration Rules") of the American Arbitration Association (the "AAA") and the Federal Arbitration Act. Disputes may include, without limitation, tort claims, counterclaims, a dispute as to whether a matter is subject to arbitration, claims brought as class actions, or claims arising from documents executed in the future. A judgment upon the award may be entered in any court having jurisdiction. Notwithstanding the foregoing, this arbitration provision does not apply to disputes under or related to swap agreements. **Special Rules.** All arbitration hearings shall be conducted in the city named in the address of Wachovia first stated above. A hearing shall begin within ninety (90) days of demand for arbitration and all hearings shall conclude within one hundred twenty (120) days of demand for arbitration. These time limitations may not be extended unless a party shows cause for extension and then for no more than a total of sixty (60) days. The expedited procedures set forth in Rule 51 et seq. of the Arbitration Rules shall be applicable to claims of less than $1,000,000.00. Arbitrators shall be licensed attorneys selected from the Commercial Financial Dispute Arbitration Panel of the AAA. The parties do not waive applicable Federal or state substantive law except as provided herein. **Preservation and Limitation of Remedies.** Notwithstanding the preceding binding arbitration provisions, the parties agree to preserve, without diminution, certain remedies that any party may exercise before or after an arbitration proceeding is brought. The parties shall have the right to proceed in any court of proper jurisdiction or by self-help to exercise or prosecute the following remedies, as applicable: (i) all rights to foreclose against any real or personal property or other security by exercising a power of sale or under applicable law by judicial foreclosure including a proceeding to confirm the sale; (ii) all rights of self-help including peaceful occupation of real property and collection of rents, set-off, and peaceful possession of personal property; (iii) obtaining provisional or ancillary remedies including injunctive relief, sequestration, garnishment, attachment, appointment of receiver and filing an involuntary bankruptcy proceeding;

and (iv) when applicable, a judgment by confession of judgment. Any claim or controversy with regard to any party's entitlement to such remedies is a Dispute.  Waiver of Jury Trial.  THE PARTIES ACKNOWLEDGE THAT BY AGREEING TO BINDING ARBITRATION THEY HAVE IRREVOCABLY WAIVED ANY RIGHT THEY MAY HAVE TO JURY TRIAL WITH REGARD TO A DISPUTE AS TO WHICH BINDING ARBITRATION HAS BEEN DEMANDED.

[The remainder of this page is intentionally left blank.]

**IN WITNESS WHEREOF**, Guarantor, on the day and year first written above, has caused this Unconditional Guaranty to be executed under seal.

EDUARD DE GUARDIOLA

State of _Georgia_

County of _Fulton_

I, _Gabrielle E. Howard_, a Notary Public in and for said state and county, do hereby certify that Eduard de Guardiola personally appeared before me this day and acknowledged his due execution of the foregoing Unconditional Guaranty.

Witness my hand and official seal this _25th_ day of April, 2006.

_gabrielle E Howard_
Notary Public

My commission expires: _4-12-09_

Notary Public
My Commission Expires April 12, 2009
Fulton County, Georgia

Unconditional Guaranty-Loan-Individual_092605 (2).DOC_Vista Aviation. LLC

8

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

404-881-7000
Fax:404-881-7777
www.alston.com

Jay D. Bennett                          Direct Dial: 404-881-7643                          E-mail: jay.bennett@alston.com

November 11, 2008

### *Via Certified Mail, Return Receipt Requested, U. S. Mail, Georgia Messenger Courier*

Mr. Eduard de Guardiola                  Vista Aviation, L.L.C.
One Midtown Plaza                        1360 Peachtree Street, N.E.
1360 Peachtree Street, N.E.              Suite 1000
Suite 1000                               Atlanta, GA 30309
Atlanta, GA 30309

Mr. Eduard de Guardiola                  Vista Aviation, L.L.C.
1100 Peachtree Street, N.E.              1100 Peachtree Street, N.E.
Suite 1500                               Suite 1500
Atlanta, GA 30309                        Atlanta, GA 30309

### *Via Certified Mail, Return Receipt Requested*

Vista Aviation, L.L.C.
c/o Its Registered Agent
The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

RE:     **NOTICE OF DEFAULT, DEMAND FOR PAYMENT,
        DEMAND FOR SURRENDER OF COLLATERAL, AND
        NOTICE OF INTENTION TO ENFORCE PROVISIONS OF
        NOTE, SECURITY AGREEMENT AND GUARANTY
        REGARDING PAYMENT OF ATTORNEYS' FEES**

Gentlemen:

We represent Wachovia Financial Services, Inc. ("Wachovia Financial"), a subsidiary of Wachovia Bank, National Association ("Wachovia").

I am writing concerning that certain Promissory Note dated April 26, 2006, in the original principal amount of $1,800,000.00, a copy of which is attached hereto as Exhibit A, the Aircraft Security Agreement dated April 26, 2006, attached hereto as Exhibit B, and the Unconditional Guaranty dated April 26, 2006 executed by Eduard de Guardiola, attached hereto as Exhibit C (hereinafter collectively the "Loan Documents").

EXHIBIT "D"

Mr. Eduard de Guardiola
Vista Aviation, L.L.C.
November 11, 2008
Page 2

On November 6, 2008, Wachovia sent to Mr. Eduard de Guardiola and/or his affiliates the Notices of Continued Default and Demand for Payment, collectively attached hereto as Exhibit D. The defaults specified in the attached Exhibit D constitute continuing defaults under the Loan Documents. Mr. Eduard de Guardiola has been on notice of these defaults since on or about October 8, 2008, if not earlier, but said defaults have not been cured.

Although we contend that your grace period of three (3) days has already expired, Wachovia Financial nevertheless grants you an additional three (3) days' grace to cure the defaults under the Loan Documents without waiving any of its rights or remedies. If you fail to cure said defaults within three (3) days of your receipt of this letter, the entire principal balance due on the Promissory Note shall be automatically and without further notice accelerated and immediately due and payable. In that event, Wachovia Financial demands immediate payment of the entire principal and interest due, and Wachovia Financial further demands that the Debtor and Guarantor then make arrangements for the immediate surrender and transfer of all collateral covered by the Aircraft Security Agreement to Wachovia Financial.

Although the Loan Documents are governed by North Carolina law, and therefore O.C.G.A. § 13-1-11 does not apply, Wachovia Financial nevertheless gives notice pursuant to both O.C.G.A. § 13-1-11 and applicable North Carolina law (N.C.G.S. 6-21.2) to the Debtor and Guarantor of Wachovia Financial's intention to enforce the provisions of the Loan Documents regarding payment of attorneys' fees. The Debtor Vista Aviation, L.L.C. and Guarantor Eduard de Guardiola have ten (10) days from the date of acceleration to pay the entire principal and interest due under the Promissory Note without payment of attorneys' fees or other charges. If said sum has not been paid within said ten (10) days, the Debtor and Guarantor will be liable, in addition to all principal and interest, for all other amounts collectible under the documents attached hereto, including attorneys' fees and costs of collection as provided by law.

As of November 10, 2008, the principal balance on the Promissory Note was $1,676,418.50. Interest accrued through November 10, 2008 was $4,751.25. Interest continues to accrue in accordance with the provisions of the Loan Documents until paid in full.

This letter does not affect any of your obligations or the rights of Wachovia or its affiliates with respect to any transaction other than the Loan Documents attached as Exhibits A-C.

Mr. Eduard de Guardiola
Vista Aviation, L.L.C.
November 11, 2008
Page 3

Please be governed accordingly.

Very truly yours,

Jay D. Bennett
Attorney for Wachovia Financial Services,
Inc.

JDB:rbp
Attachments

LEGAL02/31026489v1

# General Civil Case Filing Information Form (Non-Domestic)

**Court**   County GWINNETT   Date Filed 11/13/2008
☑ **Superior**   MM-DD-YYYY
☐ **State**   Docket # 08A-100913

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA
2008 NOV 13 PM 4:45
TOM LAWLER, CLERK

## Plaintiff(s)
VISTA AVIATION, LLC

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|
|      |       |                         |        |

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|
|      |       |                         |        |

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|
|      |       |                         |        |

**No. of Plaintiffs** 1

## Defendant(s)
WACHOVIA FINANCIAL SERVICES, INC.

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|
|      |       |                         |        |

WACHOVIA BANK NATIONAL ASSOCIATIO

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|
|      |       |                         |        |

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|
|      |       |                         |        |

**No. of Defendants** 2

**Plaintiff/Petitioner's Attorney**   ☐ Pro Se

| Florence, | Graydon | W. |        |
|-----------|---------|-----|--------|
| Last      | First   | Middle I. | Suffix |

**Bar #** 264900

---

### Check Primary Type (Check only ONE)

☐ Contract/Account

☐ Wills/Estate

☐ Real Property

☐ Dispossessory/Distress

☐ Personal Property

☐ Equity

☐ Habeas Corpus

☐ Appeals, Reviews

☐ Post Judgment Garnishment, Attachment, or Other Relief

☐ Non-Domestic Contempt

☑ Tort (If tort, fill in right column)

☐ Other General Civil Specify _____

---

### If Tort is Case Type:
### (Check no more than TWO)

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☐ Other Professional Negligence

☐ Product Liability

☑ Other Specify Fraud, Conspiracy and Georgia RICO

**Are Punitive Damages Pleaded?** ☑ Yes ☐ No